Charles A. BOURG, Plaintiff-Appellant,

v.

TEXACO OIL COMPANY, INC., Defend-
ant-Third-Party Plaintiff-Appellee,

v.

BOOKER DRILLING COMPANY, INC.,
Third-Party Defendant.

No. 75–4324.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1978.

Harvey J. Lewis, New Orleans, La., John-
ny X. Alleman, Thibodaux, La., for plain-
tiff-appellant.

J. Walter Ward, Jr., New Orleans, La.,
for Texaco Oil Co.

Before CLARK, FAY and VANCE, Cir-
cuit Judges.

FAY, Circuit Judge:

This appeal presents the sole issue of
whether a trial court committed reversible
error in refusing to give special jury
charges requested by the plaintiff Charles
Bourg. The plaintiff filed suit against Tex-
aco, Inc., seeking to recover damages for an
injury he received while working on a sta-
tionary oil production platform located on
the Outer Continental Shelf off the coast of
Louisiana. The platform was owned by
Texaco, but the plaintiff was an employee
of Booker Drilling Company—an indepen-

dent drilling contractor.[1] The plaintiff alleged that the injuries he received were caused by the negligence of the defendant Texaco. The plaintiff, however, requested certain special instructions to the effect that under applicable federal regulations, Texaco had a non-delegable duty to see that all work conducted on its platform was performed in a safe and workmanlike manner, and had the further duty to maintain equipment for the safety of all persons working on the platform and to take all necessary precautions to prevent and to immediately remove any safety or health hazards. Based on the duty imposed by these federal regulations, the plaintiff asked the trial court to instruct the jury that if they determined that the plaintiff's injury resulted from an unsafe work practice by either Texaco *or Booker Drilling Company,* then Texaco should be found negligent.[2] The trial court refused to give such instructions, and the jury returned a verdict in favor of Texaco. We affirm.

The facts in this case are not seriously contested. On June 27, 1973, the plaintiff was injured while working on one of Texaco's stationary platforms in the Gulf of Mexico. One of the wells on this platform needed certain repair work in order to increase production from the well. The Texaco production foreman assigned this work to the head of the Booker Drilling Company crew. The Texaco foreman did not supervise the work which was to be done nor did he actually observe the techniques utilized by the Booker employees in carrying out his instructions. According to the foreman, however, the head of the Booker crew was an experienced man, and he had an experienced crew with him. App. 11. The Booker crew initially tried to use its own equipment to make the necessary repairs but conditions in the well dictated a change to high pressure equipment. The task of installing this high pressure equipment was given to the plaintiff and a fellow Booker employee. These two men attempted to move about five connected sections of high pressure hose, each weighing about 150 pounds, to the desired location. In the process, the person helping the plaintiff lost

1. In actuality, plaintiff initially filed suit against Texaco and Halliburton Company. Halliburton Company was also working on the platform and owned some of the equipment which was being used at the time of the injury. The trial court granted summary judgment in favor of Halliburton, and the propriety of that order has not been appealed. The plaintiff's employer, Booker Drilling Company, was not subject to a direct suit by the plaintiff, *see* 43 U.S.C. § 1333(c), and was brought into this litigation by Texaco for indemnification purposes.

2. The text of the requested jury charges is as follows:

PLAINTIFF'S REQUESTED JURY CHARGE NO. 3

Under the facts of this case, Texaco, the platform operator, had a duty to make sure that all activities conducted on its structure were performed in a workmanlike manner; that only proper equipment and work methods were used for any assigned task and that all steps necessary to prevent accidents were taken.

If plaintiff's injury was caused by Texaco's failure to take all steps to prevent accidents or by Texaco's failure to properly supervise Booker's work methods, then you may find that Texaco was negligent.

Moreover, Texaco is also liable if plaintiff's injury was caused by Booker's negligence. So that if you determine that Booker failed to perform its work in a safe manner or that Booker failed to use proper equipment for the assigned task, then you may also find Texaco liable for Booker's negligence.

PLAINTIFF'S REQUESTED JURY CHARGE NO. 2

Defendant, Texaco, had a non-delegable duty to comply with these regulations and make sure that they were observed.

Thus, under the facts of this case, Texaco had a duty to make sure that all drilling and production operations conducted on the platform, whether performed by Texaco employees or by the employees of any other company, were carried out in a safe and workmanlike manner and to make sure that whatever equipment was necessary for the required work was furnished and properly used.

In other words, Texaco can not merely tell the employees of another company, like Booker, what work Texaco wants done and then solely rely on Booker employees to use safe work methods and proper equipment.

Consequently, if you find under the facts of this case that either Texaco or Booker used an unsafe work method or failed to use proper equipment or that Texaco failed to take all precautions necessary to prevent accidents, then you may conclude that Texaco was negligent.

control of his end of the hose causing the weight of the hose to shift to the plaintiff. This shift in weight caused the plaintiff to seriously injure his back. There was testimony at trial regarding the equipment which was available to the plaintiff and which could have been used to lift the steel hose. It is undisputed that Texaco had a crane available on the platform and that Booker had a block and tackle rig on the platform. The parties, however, disagree as to whether the block and tackle rig was available at the time of the accident.

The plaintiff argued at trial that it was negligent for Texaco to fail to take affirmative steps to see that Booker's crew was afforded the necessary mechanical equipment to accomplish the work Texaco wanted done and to take the necessary precautions to see that Booker's work practices were safe and proper under the circumstances. Moreover, the plaintiff attempted to argue that because of certain applicable federal regulations, Texaco would be legally responsible even if the jury should determine that it was the actions of Booker Drilling Company that constituted the unsafe work practice. The trial court refused to instruct on this latter theory of recovery.

▮ The jury returned a verdict for Texaco, and we presently have before us only the issue of whether the trial judge was correct in refusing to instruct the jury to the effect that Texaco was to be found negligent even if it was the actions of Booker Drilling Company which constituted the unsafe work practice.[3] The plaintiff argued that such instructions would be proper based upon the duty imposed on Texaco by certain regulations issued by the Secretary of Interior. These regulations provide in part that in the conduct of all its operations the lessee (in this case Texaco) shall take all steps necessary to prevent accidents and fires and shall perform all operations in a safe and workmanlike manner. The regulations also provide that the lessee shall maintain equipment for the protection of the lease and its improvements, for the health and safety of all persons, and for the preservation and conservation of the property and the environment. *See* 30 C.F.R. §§ 250.45–250.46.

This Court has recently had the opportunity to discuss at great length the law to be applied in cases arising from activities on the Outer Continental Shelf. *See Olsen v. Shell Oil Co.*, 561 F.2d 1178 (5th Cir. 1977). In 1953, Congress enacted the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* This Act asserted United States' ownership of and jurisdiction over minerals in and under the Outer Continental Shelf. It also extended the Constitution and laws of the United States to the shelf lands. Section 1332 of the Act asserts United States jurisdiction over the Shelf while section 1333 provides that federal law is applicable on the Shelf, applying state law only as federal law, and only when not inconsistent with applicable federal law. Section 1334 deals with the administration of leases, and it grants the Secretary of the Interior the authority to promulgate regulations in order to comply with the provisions of the Act relating to leasing. The rest of the Act, §§ 1335–43, deals almost exclusively with the leasing system to be applied on the Shelf.

In *Olsen*, Shell Oil Co. was the owner of a platform on the Outer Continental Shelf. The plaintiffs were workers on the platform who were injured as a result of an explosion of a hot water heater. Although Shell was the owner of the platform, drill-

---

**3.** At oral argument the plaintiff argued that the jury should also have been instructed that Texaco would be negligent if it failed to see that its order was properly executed and that Booker had proper equipment to carry out the order in a safe and workmanlike manner. Our reading of trial judge's charge to the jury reflects that this theory of negligence was adequately given to the jury. The trial judge charged:

If you find in this case that Texaco retained control of the workover project that was to be performed by Booker or Halliburton, then, under such circumstances, Texaco had the legal obligation to exercise such control with reasonable care to prevent the workover project from being done in a manner likely to cause injury to those employees who had to actually perform the job.
App. 198.

ing on the platform was being conducted by an independent drilling contractor known as Movible Offshore, Inc. The plaintiffs in *Olsen* were all employees of Movible, and the water heater which exploded was equipment owned by Movible. Shell had nothing to do with the actual operations on the platform, and had only one permanent representative there. The plaintiffs' theory of recovery was that a breach of the federal regulations had occurred (i. e. work was not being performed in a safe and workmanlike manner), and that this breach visited liability upon Shell regardless of whether or not Shell was in fact negligent.

We explained in *Olsen* that the Outer Continental Shelf and Lands Act provides for extensive civil remedies for injuries which may occur to a worker on the Shelf. Section 1333(c) provides that the Longshoremen's and Harbor Workers' Compensation Act should apply in cases of disability or death of an employee working on a platform, and § 1333(a)(2) provides the workers on the Shelf any remedy which might be available under state law as long as that remedy is not inconsistent with federal law. Thus, the Act allows a plaintiff any type of negligence, strict liability, or contract action which would be cognizable under state law.

The *Olsen* decision dealt extensively with the legal consequences which can arise from a breach of any of the regulations promulgated by the Secretary of the Interior. We explained in *Olsen* that the Outer Continental Shelf Lands Act did not provide specifically for a civil remedy for violation of the Secretary's regulations, and that we did not feel that it was appropriate to imply a federal cause of action. We held that federal law did not require that an owner of a platform who was not otherwise negligent, be held strictly liable for injuries resulting from a breach of the Secretary's regulations. We further explained that the plaintiff's remedies against Shell were thus limited to those afforded to them by Louisiana law.

The plaintiff in the case before us today has added a new twist to the argument presented in *Olsen* in an effort to visit liability on a platform owner for a technical breach of the Secretary's regulations. The plaintiff is not arguing that a federal cause of action exists for a breach of the regulation. Rather, the plaintiff asserts that Texaco is negligent under Louisiana law, and that the federal regulations indicate the duty of care owed under Louisiana law by a platform owner to persons on the platform. According to the plaintiff, this duty is such that it would visit liability upon Texaco even if it was the negligence of Booker Drilling Company which caused the plaintiff's injury.

We cannot accept the plaintiff's argument. We do not think that the general regulations in question are in any way analogous to safety regulations which require a specific standard of conduct in particular situations. This situation is thus distinguishable from the circumstances in *Dyson v. Gulf Modular Corp.*, 338 So.2d 1385 (La. 1976), which is cited to us by the plaintiff. In *Dyson* the Supreme Court of Louisiana held that an Occupational Safety and Health Act regulation which prohibited operation of a crane within ten feet of uninsulated high power lines was relevant to a determination of the defendant's negligence. The court explained that although violation of the regulation does not constitute negligence per se, "the trial court properly could consider this regulation in weighing the defendants' negligence." *Id.* at 1391. A similar safety regulation was present in *Burley v. Louisiana Power & Light*, 319 So.2d 334 (La.1975). The plaintiff in *Burley* was seeking to recover for injuries he incurred in an industrial accident. The plaintiff had received a serious electrical shock when a metal reinforcing rod he was installing came into contact with an electric power line. The Louisiana Supreme Court discussed at great length the treatment to be accorded to provisions of the National Electric Safety Code dealing with required vertical and horizontal building clearances for uninsulated wires. The Supreme Court concluded that the provisions were relevant and admissible in determining the defendant's negligence.

The specific regulations before us are completely different than the type of safety regulations present in *Dyson* and *Burley*, and these regulations are in no way intended to hold a platform owner vicariously liable for the negligence of others. The first of these regulations, 30 C.F.R. § 250.-45, deals with accidents, fires, and malfunctions, and it provides:

> In the conduct of all its operations, the lessee shall take all steps necessary to prevent accidents and fires, and the lessee shall immediately notify the supervisor of all serious accidents and all fires on the lease, and shall submit in writing a full report thereon within 10 days. The lessee shall notify the supervisor within 24 hours of any other unusual condition, problem, or malfunction.

The only other regulation in question, 30 C.F.R. § 250.46, deals with "workmanlike operations," and it provides:

> The lessee shall perform all operations in a safe and workmanlike manner and shall maintain equipment for the protection of the lease and its improvements, for the health and safety of all persons, and for the preservation and conservation of the property and the environment. The lessee shall take all necessary precautions to prevent and shall immediately remove any hazardous oil and gas accumulations or other health, safety or fire hazards.

We are unable to read the above regulations as creating any form of vicarious liability. It is possible that these regulations would be admissible at trial as evidence that a platform owner might have a duty to provide a safe working environment, or to hire competent or experienced contractors, or to supervise any work given to persons on the platform which was outside the scope of their expertise. The jury in our case, however, was adequately charged on these legal obligations even though the plaintiff never introduced the regulations into evidence.[4]

We recognize that in certain situations a statute or regulation may impose on a party an absolute duty, and that no excuse would exonerate the party from liability for a breach of this duty. The plaintiff is asking us to interpret these regulations as to impose such a duty on platform owners. It is the plaintiff's position that because of these regulations, a platform owner who is otherwise free of negligence and who hires an experienced independent contractor and assigns to that contractor some rather routine work should be legally responsible for the negligent work methods utilized by that contractor. We feel that it would be error to so interpret these regulations absent a clear indication from Congress that this was their intent. Our reading of the legislative history of the Outer

---

4. The trial judge charged the jury regarding working conditions as follows:

> A prime consideration in determining reasonableness is the possible risk in the particular situation. Naturally, the greater the risk of danger in any given situation, the greater the caution that will be exercised by the reasonably prudent person. That is, as the risk of danger increases, the reasonably prudent person exercises more and more care.
> Now, in determining whether or not the defendant Texaco was negligent, you may consider that it is the continuing duty of the defendant as owner of the platform to use ordinary care under the circumstances, to furnish those working aboard its platform with a reasonably safe place in which to work. The owner of a platform must always use ordinary care under the circumstances to maintain and keep the place of work and the platform's equipment used in carrying on the work in a reasonably safe condition.

> Included in this duty is the obligation to discover all reasonable discoverable defects or hazards on its platform, and to either warn the plaintiff of them or to correct them.
> The failure of a platform owner to discharge his duty as a reasonable and prudent person under the circumstances would be negligence.

App. 197–198.

The trial judge's charge regarding supervision provided:

> If you find in this case that Texaco retained control of the workover project that was to be performed by Booker or Halliburton, then, under such circumstances, Texaco had the legal obligation to exercise such control with reasonable care to prevent the workover project from being done in a manner likely to cause injury to those employees who had to actually perform the job.

App. 198.

Continental Shelf Lands Act uncovers no such intent. *See Olsen v. Shell Oil Co.*, 561 F.2d at 1189. Consequently, it would have been error for the trial judge to have so charged the jury.[5]

A complete reading of the trial judge's charge indicates that a full and fair charge on the law of negligence in Louisiana was presented to the jury. The judgment of the district court is, therefore, AFFIRMED.

---

**5.** Because we feel that the intent of Congress was not to hold a platform owner vicariously liable, it follows that any charge given to a jury under Louisiana negligence law regarding the legal duties created by these regulations would necessarily be consistent with the Congressional intent.