David John ROMERO, et al.,
Plaintiffs–Appellants,

v.

MOBIL EXPLORATION AND PRODUC-ING NORTH AMERICA, INC.,
Defendant–Appellee.

No. 90–4259.

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1991.

---

Anthony D. Moroux, Moroux, Domengeaux & Davis, Lafayette, La., for plaintiffs-appellants.

George H. Robinson, Jr., George Arceneaux, III, Liskow & Lewis, Lafayette, La., for defendant-appellee.

Before POLITZ, and DUHÉ Circuit Judges.[*]

POLITZ, Circuit Judge:

Before us is an appeal of a summary judgment dismissing the claims of injured parties and the survivors of deceased persons arising out of a blowout, explosion, and fire on a fixed natural gas platform owned by Mobil Exploration and Producing North America, Inc. located on the Outer Continental Shelf offshore Louisiana. For the reasons assigned we affirm.

### Background

The facts of this case are detailed in the published rulings by the district court, *Romero v. Mobil Exploration,* 727 F.Supp. 293 (W.D.La.1989). We note those relevant to today's disposition.

On November 10, 1986 a blowout, explosion, and fire occurred on the Mobil platform as Otis Engineering Corporation was performing a snubbing operation. In the tragic accident Aubrey Swiney and Robert Banks were killed; David John Romero and Walter Thibodeaux were injured. Snubbing is the process of forcing pipe into a working well using hydraulic power. Workers are positioned in a metal basket directly above the wellhead where they assemble and guide the string of pipe down the wellshaft. Substantial risk is inherent in the process because the pipestring is forced directly down the highly-pressurized shaft.

The Mobil/Otis contract covering the snubbing service was oral. Otis provided all personnel and equipment, except for the pipestring and blowout preventers which were leased to Mobil by Patterson Services, Inc. An investigation revealed that the explosion was caused by a faulty valvespring in the hydraulic power unit. The valve was built by the Rexroth Corporation and was tested by Otis prior to the snubbing operation. It also appears that Mobil did not conform to certain provisions of its internal snubbing guidelines, guidelines which were not reduced to writing until after the accident *sub judice.*

Romero, his family members, the other injured worker, and the survivors of the deceased workers [1] sued Rexroth, Otis, Mobil, and others, seeking recovery for their losses, asserting several legal theories. All defendants, save Mobil, either settled or were dismissed prior to this appeal.

Romero contends that Mobil violated federal drilling regulations promulgated by the Department of the Interior Minerals Management Service (MMS), which require that at all times drillers must keep their wells under control and utilize trained and competent personnel to assure the safety and protection of lives and property.[2] In this instance the Mobil employee involved

---

[*] Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

1. Hereinafter referred to collectively as "Romero."

2. The relevant regulation provides:
   30 C.F.R. § 250.50 **Control of Wells**

The lessee shall take necessary precautions to keep its wells under control at all times. The lessee shall utilize the best available and safest drilling technology in order to enhance the evaluation of conditions of abnormal pressure and to minimize the potential for the well to flow or kick. The lessee shall utilize personnel who are trained and competent and shall utilize and maintain equipment and ma-

in the snubbing—the operator of the remote shutoff console [3]—was an untrained worker who was participating in a snubbing operation for the first time.

Romero sought: (1) vicarious liability recovery against Mobil as the party in operational control of an ultrahazardous activity performed by an independent contractor; and (2) direct liability recovery for breach of the Louisiana Civil Code defect and ruin provisions, La.C.C. arts. 2317 and 2322, and the MMS regulations. The district court held as a matter of law that Mobil did not exercise operational control of the snubbing operation and, further, that snubbing is not an ultrahazardous activity under Louisiana law. Additionally, the district court ruled that a breach of MMS regulations does not give rise to a private cause of action. Mobil was granted summary judgment dismissing all claims and Romero timely appealed.

*Analysis*

■ On appeal Romero contends that the trial court erroneously ruled that violation of the MMS regulations cannot form the basis of a state law negligence claim. He premises this contention on *Restatement (Second) of Torts* § 424 (1965):

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him

to provide such safeguards or precautions.

A comment to § 424 adds:

> The rule stated in this Section applies whenever a statute or an administrative regulation imposes a duty upon one doing particular work to provide safeguards or precautions for the safety of others. In such a case the employer cannot delegate his duty to provide such safeguards or precautions to an independent contractor.

Section 424, comment a. Romero argues that the MMS regulations impose upon Mobil the genre of duty described in section 424 and that its failure to provide a properly trained individual at the remote console gave rise to liability which would otherwise be barred by the independent contractor doctrine.[4] In an Outer Continental Shelf Lands Act (Lands Act), 43 U.S.C. § 1331 *et seq.*, case, the law of the adjacent state, in this instance Louisiana, becomes the law of the United States provided it is not inconsistent with federal law or regulations. 43 U.S.C. § 1333(a)(2)(A). We conclude that no Louisiana cause of action arises merely from the breach of MMS regulations because the regulations were not created solely to "provide safeguards or precautions for the safety of others." Rather, they are but a small part of a comprehensive land use scheme which specifically includes compensation for persons injured or killed and punishment for violators.[5]

We perforce note initially that we previously have considered this issue. We first

---

terials necessary to assure the safety and protection of personnel, equipment, natural resources, and the environment.

**3.** Federal regulations require the installation of a remotely-operated blowout preventer at a "control station ... in a readily accessible location away from the drilling floor." 30 C.F.R. § 250.56(d)(3). Romero maintains that if the remote console operator had cut off the flow of natural gas properly, the severity of the accident would have been substantially reduced.

**4.** A more pertinent treatment of implied causes of action is found in *Restatement (Second) of Torts* § 874A (1977). While we find the Restatement helpful and supportive of the result reached herein, our precedents render further discussion of section 874A unnecessary.

**5.** Private citizens are statutorily empowered to commence civil actions to compel compliance with the Lands Act, 43 U.S.C. § 1349, but no cause of action *ex delicto* is founded on that provision.

> This provision permits a private citizen to bring suit to enforce the OCSLA and any regulations promulgated pursuant to it, and to seek civil penalties. A citizen thus may become a "private attorney general" with regard to OCSLA enforcement. The scope of this provision may be potentially far-reaching. But it is an enforcement action, not a strict liability tort claim for personal injury as appellants assert in these cases.

*Wentz v. Kerr–McGee Corp.,* 784 F.2d 699, 701 (5th Cir.1986) (footnote omitted). The federal government is empowered to seek equitable relief and civil and criminal penalties against vio-

addressed the subject in *Olsen v. Shell Oil Co.*, 561 F.2d 1178 (5th Cir.1977), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), in which a water heater owned by an independent contractor exploded aboard a fixed drilling platform owned by Shell Oil in federal waters offshore Louisiana. The plaintiffs, mainly survivors of workers killed in the explosion, asserted that Shell should be held strictly liable for breach of MMS regulations which require drilling lessees to take all necessary safety precautions. One district court, applying Texas law cited by the plaintiffs in *Olsen* and by the appellants now before us, had so held. *Armstrong v. Chambers & Kennedy*, 340 F.Supp. 1220, 1233–34 (S.D.Tex.1972) ("Thus, *any* violation, even a nonfeasance, of the guidelines set as preventive measures to accidents must expose the lessee to ultimate liability in tort.") (emphasis original), *aff'd and rev'd in part on other grounds sub nom. In re Dearborn Marine Serv., Inc.*, 499 F.2d 263 (5th Cir.1974), *cert. dismissed*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975). After an extensive discussion of the theories underlying implied civil causes of action and the legislative history of the Lands Act, we concluded that no cause of action may be implied from the breach of MMS regulations, stating:

> The language of Senator Cordon, and the extensive civil remedies available to the workers, indicates to us a legislative intent to deny a civil remedy for breach of the Secretary of Interior's regulations. If in fact Congress considered the situation of these workers and set forth specifically the remedies which it felt would adequately deal with the situation (and there is every indication that this is what occurred), then we would indeed be exceeding our authority to ignore their will, and, in effect, legislate our own remedies.

*Olsen*, 561 F.2d at 1189.

*Olsen* was followed a year later by *Bourg v. Texaco Oil Co.*, 578 F.2d 1117

(5th Cir.1978), in which we rejected the contention that MMS anti-fire and accident regulations, and the companion MMS mandate that all operations be performed in "a safe and workmanlike manner," imposed vicarious liability on the platform owner. In that case, the platform owner's failure to prevent the independent contractor's negligence formed the basis of the claimed regulatory breach. Relying on *Olsen*, we explained:

> It is the plaintiff's position that because of these regulations, a platform owner who is otherwise free of negligence and who hires an experienced independent contractor and assigns to that contractor some rather routine work should be legally responsible for the negligent work methods utilized by that contractor. We feel that it would be error to so interpret these regulations absent a clear indication from Congress that this was their intent. Our reading of the legislative history of the Outer Continental Shelf Lands Act uncovers no such intent.

*Bourg*, 578 F.2d at 1121–22 (citing *Olsen*, 561 F.2d at 1189).

The language of the relevant portions of the Lands Act has not been amended and it necessarily follows that the legislative history of that Act has not changed since *Olsen* and *Bourg*. Further, the implication of private civil causes of action has become more restricted than might have been considered in the late 1970s. At the time of our decisions in *Olsen* and *Bourg* the leading Supreme Court case in the area was *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). More recent cases have underscored the unanimous *Cort* Court's reluctance to imply civil causes of action from statutes such as the Lands Act. *E.g., Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (rejecting implied *Bivens*-type action against Social Security Administration personnel);

---

lators of the Lands Act or of leases, licenses, permits, regulations or orders promulgated under it. 43 U.S.C. § 1350. Injured Lands Act workers and the survivors of slain workers are

afforded relief under the provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, 43 U.S.C. § 1333(b).

*Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (rejecting implied claim for contribution against antitrust coconspirators).

■ While there is no implied cause of action from the mere breach of MMS regulations, Louisiana law does recognize that applicable federal regulations may be relevant evidence in weighing a defendant's culpability. *See Dyson v. Gulf Modular Corp.,* 338 So.2d 1385, 1391 (La.1976) ("Though violation of [Occupational Safety and Health Administration regulations] does not constitute negligence *per se,* the trial court properly could consider this regulation in weighing the defendants' negligence.") (citing *Burley v. Louisiana Power & Light Co.,* 319 So.2d 334 (La.1975)). Dicta in *Bourg* also supports the evidentiary role for MMS drilling safety regulations similar to those at bar.

> It is possible that these regulations would be admissible at trial as evidence that a platform owner might have a duty to provide a safe working environment, or to hire competent or experienced contractors, or to supervise any work given to persons on the platform which was outside the scope of their expertise. The jury in our case, however, was adequately charged on these legal obligations even though the plaintiff never introduced the regulations into evidence.

578 F.2d at 1121 (footnote omitted). *See also Dorsey v. Honda Motor Co., Ltd.,* 655 F.2d 650, 656 (5th Cir.1981) ("Generally speaking, compliance with regulatory standards may be admissible on the issue of care but does not require a jury to find a defendant's conduct unreasonable."), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); *Smith v. Atlantic Richfield Co.,* 814 F.2d 1481 (10th Cir. 1987). The evidentiary impact of regulations is also supported by the *Restatement (Second) of Torts* (1965).

> § 288 B. **Effect of Violation**
> (1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

> *(2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct.*

(emphasis supplied); *see also Restatement (Second) of Torts* § 874A (1977); W. Keeton, gen. ed., *Prosser and Keeton on the Law of Torts* § 36 (5th ed. 1984) ("A large number of courts have held that a violation is only evidence of negligence, or prima facie evidence thereof, which may be accepted or rejected according to all of the evidence.") (footnote omitted). Were this a delictual action under La. C.C. arts. 2315 *et seq.* against a proper party from whom Romero could otherwise obtain recovery, then the MMS regulations would have been appropriate grist for the decision-maker's mill. Our review of the record, and of the memorandum opinion of the district judge, however, reflects ample support for the trial court's grant of summary judgment dismissing the claims against Mobil based on Louisiana law. *Harrison v. Exxon Corp.,* 824 F.2d 444 (5th Cir.1987); *Grammer v. Patterson Servs., Inc.,* 860 F.2d 639 (5th Cir.1988), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 698 (1989). The recognition of the evidentiary function of the federal regulations does not change the outcome in this case. The regulations alone are an insufficient basis for recovery.

The judgment of the district court is AFFIRMED.