EDITH H. JONES, Circuit Judge,
dissenting.
Because a proper application of Louisiana law indicates that Chevron was entitled to the summary judgment granted by the district court, I must' respectfully dissent.
Chevron hired an experienced independent contractor to perform drilling work on its platforrri that required expertise that Chevron itself did not possess. The entire rig that was involved in Mr. Dupre’s unfortunate accident belonged to, was designed by, and was operated by Sundowner. Mrs. Dupre certainly could look to Sundowner, her husband’s employer, for compensation. I disagree, however, that Chevron owed Mr. Dupre a duty under Louisiana law under the facts of this case.
The majority argues from first principles of Louisiana tort law, but in fact, I have found no Louisiana case that has held a principal liable for the injury of an independent contractor’s employee on the basis of the principal’s duty to maintain a reasonably safe workplace. By contrast, a long line of summary judgment cases founded on Louisiana law supports the decision of the district court here. For instance, in Boutwell v. Chevron U.S.A., Inc., 864 F.2d 406 (5th Cir.1989), which arose from an offshore platform injury, the defendant’s “company man” was aware that the independent contractor had put holes in the deck of the platform. The court held, however, that Chevron was not negligent when an independent contractor’s employee fell in one of the holes because Chevron retained no rights of supervision that limited the independent contractor’s ability to perform the work in its own way. Similarly, in Grammer v. Patterson Servs., Inc., 860 F.2d 639 (5th Cir.1988), cert. denied, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 698 (1989), the principal required its independent contractor to change its test to ensure a higher pass rate for acceptable pipe fixtures. Nevertheless, it was held that the defendant did not exercise sufficient operational control *159 over the independent contractor to be held liable for negligence because its actions exhibited no control over the manner in which the work was to be performed. Particularly analogous is Ainsworth v. Shell Offshore, Inc., 829 F.2d 548 (5th Cir.1987), cert. denied, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988), in which the Shell “company man” on the offshore platform had knowledge that its subcontractor was working its crew without lights at night; this court held that Shell had no duty to intercede in its subcontractor’s decision to work without lights. See also Hawkins v. Evans Cooperage Co., Inc., 766 F.2d 904 (5th Cir.1985) (principal not liable because it did not exercise control over the independent contractor and had no duty to discover and remedy hazards created by the acts of the independent contractor).
The majority has accepted the plaintiff’s attempt to distinguish these uniformly adverse precedents by asserting that Chevron is liable for its own negligence. The record does not, however, support this position. Contrary to the implication of the majority opinion, nothing in the record before us suggests that Chevron reserved and exercised a right to approve — on safety grounds — the installation of the Sundowner V. There is no reason to suppose that Chevron’s approval of Sundowner V was related to the safety of the rig, as the rig was entirely composed of Sundowner equipment. The decision whether to place guardrails around the outer edges of the elevated Sundowner rig and the traction motor atop it were the responsibility of Sundowner; Chevron had nothing to do with the design and use of Sundowner’s own equipment. Moreover, the fact that the Sun-downer V extended beyond the outer edges of the platform was, as indicated in the affidavit of the plaintiff’s own expert, common offshore practice. It cannot be overemphasized that Chevron’s mere approval of Sun-downer’s installation drawings cannot create a fact issue on Chevron’s possible negligence under our past authorities. If that is what the majority holds, their ruling is inconsistent with Boutwell and Ainsworth, where the acquiescence of the principal in arguably dangerous practices involving the principal’s platform did not create a duty.
Moreover, the majority cannot bootstrap their finding of a duty from the fact that Chevron provided.safety inspectors who occasionally checked Sundowner’s rig for safety compliance. Louisiana law preempts such reasoning. See LeJeune v. Shell Oil Co., 950 F.2d 267 (5th Cir.1992); Duplantis v. Shell Offshore, Inc., 948 F.2d 187 (5th Cir.1991). Chevron’s inspection checklist — which was signed by both a Chevron and a Sundowner representative at each inspection — explicitly provided:
It is understood that compliance with all applicable .legal requirements and the safe conduct of all drilling operations are and remain the responsibility of any contractor executing a drilling contract or operation for Chevron. Chevron’s maintenance and use of the above and foregoing checklist procedure shall in no manner whatsoever modify, waive, or alleviate the duties and obligations of contractor or modify or enhance Chevron’s duties or responsibilities with respect thereto whether under contract or by law or otherwise.
See, e.g., LeJeune, supra (the relationship between the principal and independent contractor is determined in large measure by the terms of the contract even though Shell had a manual for independent contractor safety and examined the area to be worked on to determine whether it was safe); Bout-well, supra (the language of the contract between the principal and its independent contractor dictates and is primarily controlling when determining the responsibilities of the parties).
It is also erroneous to cite various federal regulations in support of a duty running from Chevron to Mr. Dupre to provide a workplace free from, recognized hazards. The majority focuses on testimony to the effect that the set-up and placement of the Sun-downer rig on Chevron’s platform created a “recognized hazard,” a term used in some of the regulations. However, this circuit has rejected the argument that an MMS regulation can create a duty upon a platform owner. See Romero v. Mobil Exploration and Producing N. Am., Inc., 939 F.2d 307, 309-10 (5th Cir.1991) (concluding that no cause of action arises merely from the breach of an *160 MMS regulation because the regulations were not created solely to provide safeguards or precautions for the safety of others). A private citizen is not afforded a cause of action because of a violation of an MMS provision. Instead, private citizens are merely empowered to commence civil actions to compel compliance with the provisions. See id. at 309-10 n. 5.
Under Louisiana law, Sundowner — not Chevron — had the primary responsibility of providing its employees with a safe place to work, including safe equipment upon which to work and safe methods by which to work. See Kent v. Gulf States Utils. Co., 418 So.2d 493, 500 (La.1982). Thus, even if Chevron could possibly have prevented this freak accident by employing additional safety measures, Chevron did not have a duty to Sundowner’s employees who had to work on what turned out to be Sundowner’s unsafe equipment. See, e.g., Ainsworth, supra. Chevron cannot be held hable when Chevron did not affirmatively create the hazardous situation by requiring Sundowner to use dangerous equipment or methods. See Kent, supra.
Those are the lessons of previous cases based on Louisiana law. If the majority’s artful reconstruction of duties between principal and independent contractor’s employees is adopted, however, those authorities become meaningless. One can hardly distinguish from this ease a case in which a Chevron employee observed oil spilled on the decks or scaffolding hastily erected by the independent contractor. If Chevron allowed work to continue, would it not run afoul of the newly defined duty to provide a reasonably safe workplace? Such a result would fly in the face of the above-cited authorities.
To the extent the majority’s holding is inconsistent with our previous decisions and with Louisiana tort law, it has little prece-dential force. I must respectfully dissent.