**Sharon S. DUPRE, et al.**

v.

**CHEVRON U.S.A., INC., et al.**

**Civil Action No. 91–4250.**

United States District Court,
E.D. Louisiana.

June 24, 1996.

---

Harvey Jay Lewis, Lewis & Kullman, New Orleans, LA, E. Bragg Williams, III, Williams, Williams & Montgomery, Poplarville, MS, for Sharon S. Dupre.

George Burton Jurgens, III, Nesser, King & LeBlanc, New Orleans, LA, for Chevron U.S.A. Inc.

### ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT

VANCE, District Judge.

This matter is before the Court on the motion of plaintiff, Sharon S. Dupre, individually and as natural tutrix of her minor child, Beau Nicholas Dupre, for a new trial pursuant to Fed.R.Civ.P. 59. For the reasons stated below, the Court DENIES plaintiff's motion.

### I. BACKGROUND

On January 29, 1995, the Court entered an order granting summary judgment in favor of defendant, Chevron U.S.A., Inc. ("Chev-

ron"). In so doing, the Court held that Chevron did not acquire a duty of reasonable care to Russell Dupre, a contract employee, by either its approval of his employer Sundowner's placement of the rig or Chevron's platform or by its safety inspection program. The Court then entered judgment in favor of defendant and against plaintiff. On February 9, 1996, plaintiff filed this motion for a new trial pursuant to Fed.R.Civ.P. 59, which the Court will treat as a Rule 59(e) motion to alter or amend the judgment. *See Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 175 (5th Cir.1990) (motion served within ten days of entry of judgment properly characterized as Rule 59(e) motion). In her motion, plaintiff requests that the Court vacate its judgement dismissing her claim and deny defendant's motion for summary judgment.

In support of her claim that Chevron owed her husband a duty of reasonable care, plaintiff presents the Court with new evidence in the form of Chevron's Outer Continental Shelf ("OCS") lease with the United States Government.[1] Outside of the lease, plaintiff merely repeats the same arguments that the Court has already rejected in its previous Order. The Court now considers plaintiff's motion.

## II. DISCUSSION

■ As a threshold matter, the Court must decide whether to consider plaintiff's newly presented evidence. In order to re-open a case under Rule 59(e) on the basis of evidentiary materials that were not timely submitted, the movant need not show that default was the result of mistake, inadvertence, surprise, excusable neglect, or that the evidence is such as to show that the judgment was manifestly wrong as she would under Rule 60. *Lavespere*, 910 F.2d at 174. Instead, the Court enjoys "considerable discretion" in deciding whether to consider such evidence. *Id.* However, it should be cognizant of two clashing judicial principles: the

need to bring litigation to an end and the need to render just decisions on the basis of all the facts. *Id.*

■ In attempting to strike the proper balance between these competing goals, the Court should consider, among other things, the following:

(1) the reasons for the moving party's default;

(2) the importance of the omitted evidence to the moving party's case;

(3) whether the evidence was available to the nonmovant before she responded to the summary judgment motion; and

(4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.

*Id.; Ford v. Elsbury*, 32 F.3d 931, 937–38 (5th Cir.1994).

■ Although plaintiff admits that she had access to the lease contract prior to the filing of defendant's summary judgment motion, she argues that she did not realize the importance that the Court would place on the contractual relationship between the parties. Plaintiff's Reply at 3–4. While the plaintiff's rationale is not a particularly strong one, the Court finds that it meets the lesser showing required under Rule 59(e). The Court is reluctant to exclude evidence that will allow it to fully consider all the facts of the case. Moreover, defendant has failed to allege that it would be prejudiced by the Court's reopening of the case. Accordingly, the Court will include the OCS lease contract in the summary judgment record as it considers plaintiff's Rule 59(e) motion.

### A. The OCS Lease Contract

■ Plaintiff argues that the provisions of Chevron's OCS lease with the federal government impose a non-delegable duty on the part of the lessee to comply with all applicable regulations promulgated by the Mineral Management Services ("MMS"). *See* 33

---

1. The parties to the original lease were Gulf Oil Corporation and the United States Government. (Plaintiff's Ex. A, OCS Lease Contract of April 1, 1976.) However, in 1985, Chevron and Gulf Oil merged and Gulf Oil changed its name to Chevron. (Plaintiff's Ex. B, Merger and Change of Name Recognition by the Mineral Management Service of the US Dept. of the Interior, July 19, 1985.) Therefore, the Government recognized Chevron as the entity that entered into a OCS lease contract with the federal government. (*Id.*)

C.F.R. § 142.4(a). According to plaintiff, Chevron had a duty to insure that "all normally occupied" areas were protected with "guard rails or mesh fence." *See* 33 C.F.R. 143.110(a). However, as plaintiff is no doubt aware, the Court has already addressed the effect these MMS regulations had on Chevron's duty of due care.

The OCS lease has not created any new duties; the Court in its Order was already operating under the assumption that the MMS regulations were applicable to the defendant. In dismissing plaintiff's argument, the Court followed Fifth Circuit precedent in finding that "there is no implied cause of action from the mere breach of MMS regulations." *Romero v. Mobil Exploration and Producing N.A., Inc.*, 939 F.2d 307, 311 (5th Cir.1991); *see* Court's Order at 16–17.

In addition, the Court has already held under the facts of this case that the regulations did not create a duty on the part of Chevron to maintain a safe workplace for Russell Dupre and his co-workers. Court's Order at 17. The contract between Chevron and Mr. Dupre's employer, Sundowner, specified that Sundowner was responsible for maintaining a safe workplace and conducting its operations consistent with federal and state regulations and industry standards. *Id.* As the Court previously pointed out, the tragic accident that claimed Mr. Dupre's life occurred in Sundowner's sphere of operations. Court's Order at 2–3, 10, 21. Chevron had no direct control over Sundowner's activities on the rig.

Although plaintiff argues that 33 C.F.R. § 142.4(a) mandates a non-delegable duty on Chevron to ensure that all lease areas are maintained in compliance with "workplace safety and health regulations" and free from "recognized hazards," she ignores caselaw that states that an owner's obligation is satisfied by hiring a competent contractor.[2] *See Bourg v. Texaco Oil Co., Inc.*, 578 F.2d 1117, 1121–22 (5th Cir.1978) (platform owner who hires experienced independent contractor not liable for negligence of contractor). More-

over, plaintiff fails to address subsection (b) of that regulation that states that the persons responsible for the actual operations, in this case Sundowner, is responsible for ensuring compliance with workplace safety and health regulations and to keep its area free of recognized hazards. *See* 33 C.F.R. § 142.4(b).

Finally, plaintiff admits "that making the platform owner potentially liable for defects in the contractor's drilling rig is squarely at odds with *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir.1987) and its progeny. Plaintiff's Reply at 9. To the extent plaintiff asks the Court to overrule Fifth Circuit precedent to find a duty based on the Outer Continental Shelf Lands Act and its regulations, the Court declines that invitation.

### B. *Plaintiff's Other Arguments*

In the remainder of her Rule 59(e) motion, plaintiff merely reasserts her previously rejected arguments. First, plaintiff argues that the Court erred by holding that Chevron owed no duty to its independent contractors working on the drilling rig, in part, because the rig was not on Chevron's premises. Apparently, plaintiff objected to the Court's analogous use of Louisiana strict liability law to determine whether the rig constituted an appurtenance to Chevron's platform. Plaintiff cites law that states that an owner and operator must exercise reasonable care "*on or around his property.*" Plaintiff's Opp. at 12 (*citing Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 239) (5th Cir.1983). Plaintiff presumably believes that even if the rig were only an appurtenance to Chevron's platform, Chevron's duty extends to it because it is "around" Chevron's platform. However, plaintiff fails to acknowledge that the Court's use of the appurtenance doctrine was but one more illustration of Chevron's lack of operational control over the rig. An owner's duty has limits and the Court draws the line in this case at the drilling rig, a mere appurtenance to its own property and a place where

---

**2.** The only applicable exception would be if drilling were an "ultrahazardous activity." However, the Fifth Circuit has already held that it is not. *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir.1987), *cert. denied,* 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988).

its contractor had both contractual and actual responsibility for safety.

Finally, plaintiff merely realleges her argument that Chevron acquired a duty of reasonable care through its safety program. The Court need not reiterate the factual findings that led to its conclusion that no duty was triggered. *See* Court's Order at 18–23. Plaintiff simply failed to show that Chevron's behavior rose to the level required for it to have acquired such a duty. *See Graham v. Amoco Oil Company*, 21 F.3d 643, 647 (5th Cir.1994) (contrasting facts with case where duty was triggered). Accordingly,

**IT IS ORDERED** that plaintiff's motion to alter or amend the judgment is hereby **DENIED.**