BARKETT, Circuit Judge,
dissenting:
I respectfully dissent, finding the majority opinion in conflict with United, States v. Brown, 79 F.3d 1550 (11th Cir.1996).[1] Brown holds that “[t]o prove a crime [of mail fraud], the government must show the defendant intended to create a scheme reasonably calculated to deceive persons of ordinary prudence and comprehension.” Id. at 1557 (emphasis added)(internal citation omitted). I cannot accept that the scheme or representations in this case could be “reasonably calculated to deceive persons of ordinary prudence and comprehension.”
We found in Brawn that agents of a large real estate developer who made material misrepresentations in an attempt to lure costumers from snow-belt states into buying overpriced homes were not guilty of mail-fraud because “reasonable jurors could not find that a person of ordinary prudence, about to enter into an agreement to purchase a ... home in Florida, would rely on ... the seller’s own affirmative representations about the value or rental income of the ... homes.” 79 F.3d at 1559.
I find it impossible to reconcile how a prudent person would not rely on a large developer’s official-looking but false or misleading real-estate appraisals; but that a prudent person (albeit, this time facing serious criminal charges) would rely on the anonymous communications in this case.
The majority asserts that the crime was complete at the time of the first communication, in which the anonymous author misrepresented that “we can assure you ... no imprisonment” and that certain mutual friends were willing to aid Patti in this respect. However, the letter containing that communication reeked of unreliability: the letter requires that Patti not tell anyone about the communication (“[d]o not discuss this info with anyone, including [with your associate and lawyer]”); the letter requires Patti to assume a code name (“[y]ou must answer the phone by saying hello, this is Jack Simmons”); it requires that he should communicate secret messages (“[i]nsert the words ... yes, we have ... in front of the words shrimp, oysters and catfish on your flashing sign out front of Joe Patti’s”); it guarantees the result in a criminal case, irregardless of guilt (“[w]e can assure you and A.G. of no imprisonment, but you must pay the agreed tax settlement issued by the court.”); and it is anonymous. No doubt the unbelievable nature of the communication motivated the author to self-consciously assert that “[t]his is not a prank but real serious business.”
If “reasonable jurors could not find that a person of ordinary prudence, about to enter into an agreement to purchase a ... home in Florida, would rely on ... the seller’s own affirmative representations about the value” of the properties at issue in Brown, how can it possibly be said that a reasonable juror could find that a person *1275 of ordinary prudence would act on this shady and ridiculous anonymous communication?
Because the initial letter was not designed to deceive a person of ordinary prudence, I do not believe the crime of mail fraud was completed by the mailing of that communication. Subsequent communications similarly failed to lend any credibility to the scheme. Indeed, the first conversation Patti had with Gray quickly dispelled any notion Patti had that the representations were genuine;[2] just as it would have dispelled any hint of reliability for a reasonable person. The caller created a fantastic conspiracy theory complete with mysterious five-star generals and famous senators.[3]
I therefore respectfully dissent.

. Whether or not we agree with this Court’s decision in Brown, we are bound by it. United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir.1993) (“[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.”).

. Patti testified: “I didn't believe anything he told me after the J-l, J-2, and J-3."

. Moreover, in my mind, a scheme that depends on a person’s willingness to bribe a jury is, in most instances, not a “scheme reasonably calculated to deceive persons of ordinary prudence.” Id. at 1557. Besides transcending the bounds of ethics and morality, a person who would bribe a jury exposes herself to greater risk and criminal sanctions. Furthermore, because illegal contracts cannot be enforced by law, a person that gives consideration for such a contract must do so with full knowledge that no legal remedy exists if the other party breaches. It is hardly believable that a prudent person would rely on an invitation to commit a crime without knowing who was behind the invitation.
Despite the majority's assertions to the contrary, the amount of risk involved is central to a determination of whether a reasonably prudent person would participate in the proposed transaction. See Majority Opinion, Note 18. Indeed, “prudence” is defined as "attentiveness to possible hazard or disadvantage” and "prudent” is synonymous with "cautious.” Webster's Third New International Dictionary 1828 (1993). Furthermore, risk-aversion is intimately related with "reasonableness.” See, e.g., Bourg v. Texaco Oil Co. Inc., 578 F.2d 1117, 1121 (5th Cir.1978)(approving trial court's jury instruction that stated: "A prime consideration in determining reasonableness is the possible risk in the particular situation. Naturally, the greater the risk of danger in any given situation, the greater the caution that will be exercised by the reasonably prudent person. That is, as the risk of danger increases, the reasonably prudent person exercises more and more care.”(emphasis added)).
The "bizarre result” the majority fears is really an expression of dissatisfaction with our holding in Brown that a mail fraud scheme must be calculated to deceive "persons of ordinary prudence.” Once again, whether or not we believe this should be the rule, we are nevertheless bound by it.