Fred H. **AINSWORTH** and Gloria Ainsworth, Plaintiffs-Appellants,

v.

**SHELL OFFSHORE, INC.,**
Defendant-Appellee.

No. 87–4006.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1987.
Rehearing Denied Nov. 9, 1987.

John W. Scott, B. Gerald Weeks, Weeks & Wells, Alexandria, La., for plaintiffs-appellants.

Arthur A. Crais, Jr., Judith Y. Robertson, Adams & Reese, Edwin C. Laizer, James E. Blazek, Scott E. Delacroix, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, RANDALL and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Fred and Gloria Ainsworth appeal the grant of a summary judgment dismissing their suit against Shell Offshore, Inc., 649 F.Supp. 1223 (W.D.La.1986). We find no error and affirm.

## I.

Shell Offshore, Inc. (Shell) owns an offshore platform permanently affixed to the floor of the Gulf of Mexico on the Outer Continental Shelf off the Louisana coast. Shell hired an independant contractor, Hercules Offshore Drilling Company (Hercules), to furnish a drilling rig and drill a well from the bare Shell platform. The first step in Hercules' operation was to transport its drilling rig offshore and assemble it on the platform. During the process of installing its equipment on the rig, Hercules worked its crews around the clock. This work proceeded at night even though no lights were provided to illuminate the work area. Mr. Ainsworth was injured when, during a night shift, he searched for a dropped tool and fell. It is undisputed that the lack of lighting caused the accident. Mr. Coward, president of Hercules, admitted that Hercules was responsible for lighting their work area during the rig up.

Ainsworth sued Shell under Louisiana Civil Code articles 2315, 2317, and 2322. The district court granted Shell's motion for summary judgment and dismissed Ainsworth's action.

## II.

### A.

The district court correctly denied relief under Louisiana's general negligence provision, Civil Code article 2315.[1] Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties. *See, e.g., Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904 (5th Cir.1985); *Robideaux v. Hebert*, 118 La. 1089, 43 So. 887 (1907). Although this rule is subject to two exceptions, neither of them applies to permit recovery against Shell in this case.

Under the first exception, a principal may not avoid liability for injuries resulting from an ultrahazardous activity by hiring out the work to an independent contractor. *See Hawkins, supra; O'Neal v. Int'l Paper Co.*, 715 F.2d 199 (5th Cir. 1983); *Ewell v. Petro Processors, Inc.*, 364 So.2d 604 (La.App. 1st Cir.1978), *writ refused*, 366 So.2d 575 (La.1979). Activities included within the "ultrahazardous" category include pile driving, storage of toxic gas, blasting with explosives, and crop dusting; we must consider whether drilling operations are also to be considered ultrahazardous.

---

1. Article 2315 provides, in pertinent part: "Every act of man that causes damages to another obliges him by whose fault it happened to repair it."

Whether an activity qualifies as ultrahazardous in Louisiana is a question of law. *Hawkins, supra; Perkins v. F.I.E. Corp.,* 762 F.2d 1250 (5th Cir.1985). The court in *Perkins* discussed the Louisiana doctrine of ultrahazardous activity in detail, finding the doctrine to be defined by three boundaries: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury. *Id.* at 1267–68. We need not consider the first two elements of this definition because drilling operations do not satisfy the third. This element requires that the activity "can cause injury to others, even when conducted with the greatest prudence and care." *Kent v. Gulf States Utils. Co.,* 418 So.2d 493, 498 (La.1982). The "ultrahazardous" label is thus limited to those activities which present "a risk of harm that cannot be eliminated through the exercise of due care." *O'Neal,* 715 F.2d at 202.

We conclude that drilling operations are not ultrahazardous. We have discovered no Louisiana cases holding otherwise, and Louisiana courts routinely analyze personal injury and property damage cases arising from drilling activities under negligence principles. *See, e.g., Smith v. Shell Oil Co.,* 746 F.2d 1087 (5th Cir.1984); *Knott v. Frank's Casing Crew & Rental Tools, Inc.,* 468 So.2d 798 (La.App. 1st Cir.1985); *Franklin v. Oilfield Heavy Haulers,* 478 So.2d 549 (La.App. 3d Cir.1985), *writ refused,* 481 So.2d 1330 (La.1986).

The second exception imposes liability upon a principal for the negligent acts of an independent contractor when the principal retains or exercises operational control. *See Hawkins, supra; Wallace v. Oceaneering Int'l,* 727 F.2d 427 (5th Cir.1984); *McCormack v. Noble Drilling Corp.,* 608 F.2d 169 (5th Cir.1979); *Touchstone v. G.B.O. Corp.,* 596 F.Supp. 805 (E.D.La. 1984).

The Master Drilling Agreement describes the relationship between Shell and Hercules.

> 16.1  *Independent Contractor*  Contractor is an independent contractor with respect to performance of all work hereunder.and neither Contractor nor anyone employed by Contractor shall be deemed for any purpose to be the employee, agent, servant or representative of Shell in performance of any work or service hereunder. Shell shall have no direction or control of Contractor or its employees and agents *except in the results to be obtained.* The work performed hereunder shall meet the approval of Shell and be subject to the general right of inspection provided herein for Shell to secure the satisfactory completion thereof.
>
> 16.2  ... Contractor shall perform and supervise all work hereunder....

Master Drilling Agreement at 25 (emphasis added).

██   The appellants assert that the presence of a Shell "company man" on the platform is evidence of Shell's retained control of the project. Louisiana case law does not support this argument. In *Williams v. Gervais F. Favrot Co.,* 499 So.2d 623 (La.App. 4th Cir.1986), an independent subcontractor's employees were injured while working on a construction site. The plaintiffs sued the building owner, alleging that the owner had retained sufficient control over the project to be held liable for the workers' injuries. By contract, the owner's contribution to the project was limited to the provision of plans and specifications and reservation of the right to insist on a final product that conformed to those plans. "The fact that [the owner] periodically inspected the jobsite to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control." *Id.* at 626. Further, the court in *Hemphill v. State Farm Ins. Co.,* 472 So.2d 320 (La.App. 3d Cir.1985), wrote that the "control" determination "depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is *actually* exercised by the principal is less

significant." *Id.* at 322 (emphasis in original) (citation omitted).

The summary judgment evidence does not support the imposition of liability against Shell. William C. Coward, the president of Hercules, testified that his company had full control of and responsibility for the operation. Coward deposition at 14–15, 24–25. He represented that "[n]o Shell employee would participate in the rig-up procedure. At times, there would be an operator or representative on the platform. At other times, there will not be. They are not required to be there, and they don't participate." *Id.* at 14. Under the contract, Shell's company man had no right to interfere in Hercules' operation; he only represented Shell's interest in the final product. Shell retained no control over Hercules' activity, and it may not be held liable for the independent contractor's acts under this theory.

■ The appellants' final claim under article 2315 rests on the fact that the Shell representative was on the platform at the time Mr. Ainsworth was injured and knew that Hercules was working its night crew without lights. The appellants contend that Shell's knowledge of the danger to which the Hercules crew was exposed gives rise to a duty by Shell to intervene in Hercules' operation.

In *Kent*, 418 So.2d 493, the Louisiana Supreme Court considered the State's liability for injury to an independent contractor's employee. In that case, the Louisiana State Department of Highways contracted with Barber Brothers Contracting Company (Barber) to widen a public roadway. The plaintiff, a Barber employee, was injured when the thirty-foot aluminum pole he was using to texture the highway came into contact with high voltage electrical lines. Although a State project engineer had observed the plaintiff using the aluminum pole beneath the power lines for some two hours, the supreme court declined to hold the State liable. The court stated that the engineer "arguably could

have prevented the accident by interjecting himself and demanding that Barber furnish [the plaintiff] with a fiberglass rake, but he had no such duty to [the plaintiff], and is not liable for failing to do so. Furthermore [the engineer] did not affirmatively create a hazardous situation by requiring [the plaintiff] to use dangerous equipment or methods." *Id.* at 500; *see also Touchstone*, 596 F.Supp. 805.

We conclude that Louisiana law will not support the imposition of liability upon Shell for failure to intercede in Hercules' decision to work without lights.

### B.

■ The district court properly granted summary judgment against the appellants' strict liability claims under Louisiana Civil Code article 2317.[2] The district court determined that Shell had no custody over the rig and was therefore exonerated as a matter of law.

Strict liability is imposed under article 2317 when (1) the thing causing damage was in the defendant's custody, (2) the thing had a vice or defect, and (3) the vice or defect occasioned damage. *Stewart v. Sam Wallace Indus. Co.*, 409 So.2d 335 (La.App. 1st Cir.1981), *writ refused*, 413 So.2d 497 (La.1982). "Custody" as it is used in this article means supervision and control. *Steele v. Helmerich & Payne Int'l Drilling Co.*, 738 F.2d 703, 707 (5th Cir.1984); *Colleps v. State Farm Gen. Ins. Co.*, 446 So.2d 988 (La.App. 3d Cir.1984).

The uncontroverted summary judgment evidence supports the district court's conclusion that Shell did not have custody of the Hercules drilling rig. Hercules' president, Mr. Coward, testified at his deposition that Hercules owned both the rig itself and all the drilling components and tools used in the rig-up procedure. Coward deposition at 14. He further testified that no Shell employee was expected to participate in the rig-up and that Hercules bore full responsibility for the operation. *Id.* at 14,

---

**2.** Article 2317 provides, in pertinent part: "We are responsible, not only for the damage occasioned by our own act, but for that which is

caused by the act ... of things which we have in our custody."

24. All the summary judgment evidence pointed to Hercules—not Shell—as the custodian. The district court correctly rejected Ainsworth's article 2317 claim against Shell.

### C.

■ Appellants finally argue that the district court erred in rejecting the claim they predicate on Louisiana Civil Code article 2322; this article imposes liability upon the owner of a building for injury resulting from the building's "ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."[3] To prevail on this strict liability claim, the appellants must prove that (1) there was a building; (2) the defendant was its owner; and (3) injury was caused by a "ruin" resulting from a vice in original construction or neglect to repair. *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1289 (La. 1978).

*Olsen* is the leading case for application of article 2322 to offshore drilling platforms. In *Olsen*, a number of employees of an independent drilling contractor were killed or injured after a water heater exploded. The heater was installed in a portable living quarters module which was in turn attached to a Shell Oil Company platform. The living quarters module belonged to Movible Offshore, a drilling contractor, and was attached to the platform to provide a place for Movible's employees to live while they drilled. Although the explosion resulted from the contractor's failure to properly maintain the heater, the plaintiffs successfully asserted claims against Shell under article 2322.

The Louisiana Supreme Court in *Olsen* first determined that a fixed drilling platform is a "building" within the meaning of article 2322. *Id.* at 1290. The Court then found that the living quarters module (containing the water heater) was an "appurtenance" to the platform because it was permanently attached to the platform. Next, it determined that article 2322 imposed a

nondelegable duty on Shell to keep the platform and its appurtenances in repair despite the fact that Movible owned the water heater. Finally, the *Olsen* court held that the water heater's explosion, resulting from a neglect to repair it, constituted ruin. *Id.* at 1292–93.

In *Olsen*, however, the living quarters module had been in place on the platform for some time. By contrast, in the instant case Hercules was in the process of installing its drilling rig on the platform; at the time of the accident, installation of the rig was only twenty to twenty-five percent complete.

Because Ainsworth was injured as the result of Hercules' unsafe work practices during the installation of the rig on a platform, we are persuaded that *Olsen* does not control the outcome of this case. Article 2322 imposes liability on the owner of a building for damage occasioned by its ruin only when the ruin is caused by either neglect to repair the building or vice in its original construction; it does not seek to impose liability for ruin during the construction of a building or the addition of an appurtenance. The Louisiana authorities are consistent with this interpretation.

In *Temple v. General Ins. Co. of America*, 306 So.2d 915 (La.App. 1st Cir.1974), a brick wall had been destroyed and the plaintiff was rebuilding the wall when it collapsed and injured him. The court found that the plaintiff had not established that the wall collapsed due to "ruin" caused by "neglect to repair it" or a "vice in original construction." The court stated "counsel has not cited to us any case which holds [2322] applicable to the construction or repair of a building. We find no liability herein." *Id.* at 917.

The Louisiana Supreme Court cited *Temple* with approval in *Fonseca v. Marlin Marine Corp.*, 410 So.2d 674 (La.1981). In that case, Fonseca sued to recover for injuries he sustained after falling from the partially completed second floor of a barn.

---

**3.** Article 2322 provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

Fonseca, a carpenter, had been hired to complete construction on the barn. When he began his work, the floor joists were in place on the upper level of the barn. Boards had been temporarily laid but not nailed across those joists. Fonseca stepped on the end of one of those unsecured boards which flipped up and caused his fall.

The court in its initial opinion imposed liablity on the owner of the barn under articles 2315, 2317, and 2322. On rehearing, however, the court withdrew its imposition of liability under article 2322, and based its holding on articles 2315 and 2317.

Summary judgment was properly entered in favor of Shell on the claim Ainsworth predicates on article 2322.

### III.

The district court correctly granted summary judgment to Shell; accordingly its judgment is affirmed.

AFFIRMED.