Charles BOUTWELL, and Carol Boutwell, Plaintiffs-Appellants,

and

Rockwood Insurance Company, Intervenor-Appellant,

v.

CHEVRON U.S.A., INC., Defendant-Appellee.

No. 88-3198.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1989.

Lawrence D. Wiedemann, A. Remy Fransen, and William N. Hazlaris, New Orleans, La., for Boutwell.

Bruce J. Toppin, New Orleans, La., for Rockwood Ins.

Patrick A. Talley, Jr., George B. Jurgens, III, Milling, Benson, Woodward, Hillery, Pierson & Miller, New Orleans, La., for defendant-appellee.

Before JOHNSON, JOLLY and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Charles Boutwell appeals from the district court's grant of summary judgment in favor of appellee Chevron U.S.A., Inc. Because the district court correctly determined that Boutwell was unable to prevail on any of the three pleaded grounds of recovery, we affirm.

## I.

In April of 1987, Chevron took bids to obtain the services of a construction contractor to perform a structural upgrade[1] on Chevron's oil and gas production platform, the South Timbalier 151, located on the outer Continental Shelf, off the coast of Louisiana. C & B Fabricators, Inc. (hereinafter C & B) was awarded the contract. On May 18, 1987, Chevron and C & B entered into a written agreement which indicated that C & B was to provide all labor, equipment, materials, and supervision to upgrade the S.T. 151. The contract specifically stated that C & B would perform the work as "an independent contractor and not as an employee" of Chevron.

In order to accomplish the upgrade, C & B had to create various holes in the deck of the platform. For example, holes were created when portions of the grating were changed out, or when equipment had to be run through a platform deck. Whenever a hole was created, C & B required that its employees rope and chain off the hazard.

Boutwell was hired by C & B to work on the Chevron project. On June 18, 1987, after he had been working for about six days, Boutwell tripped and fell into an unbarricaded hole which C & B had created on the S.T. 151 platform. According to Boutwell, the hole was covered by a piece of plywood, but had not been roped or chained off. Boutwell filed suit against Chevron seeking to recover under theories of negligence and strict liability pursuant to Louisiana Civil Code, Articles 2315, 2317, and 2322. Rockwell Insurance Company intervened to recover workman's compensation benefits paid to Boutwell. The district court, pursuant to Chevron's motion for summary judgment, dismissed the complaint. From this dismissal, Rockwell and Boutwell appeal.[2]

## II.

 The district court correctly denied relief under Louisiana's general negligence provision.[3] As a general rule, a principal is not liable for the negligent acts of his independent contractor. *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904 (5th Cir. 1985). Two exceptions to this general proposition may apply to shift liability to the principal. In this case, neither exception is applicable.

Under the first exception, a principal may not avoid liability for injuries resulting from an ultrahazardous activity by hiring out work to an independent contractor. Louisiana case law[4] and recent decisions of this Court indicate that the activities involved in this case cannot properly be considered ultrahazardous. Neither party disputes this characterization. Rather, it is the second exception to the general rule of principal nonliability which forms the primary battleground in the case before us today.

Under the second exception, a principal incurs liability for the negligent acts of an independent contractor over which the principal exercises operational control or which it has expressly or impliedly authorized.[5] Boutwell argues that summary judgment was improper because the evidence

---

1. The structural upgrade involved changing out the structure's grating decks, production piping, deckplate, and various other items of equipment.

2. Initially, Boutwell argued on appeal that summary judgment was improper with respect to all three grounds of recovery. At oral argument, however, Boutwell conceded that he was not entitled to prevail on the basis of 2322. Article 2322 provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." We agree with Boutwell's assessment; accordingly, 2322 will not be discussed in the text of this opinion.

3. Article 2315 provides, in pertinent part: "Every act of man that causes damage to another obliges him by whose fault it happened to repair it."

4. *Franklin v. Oilfield Heavy Haulers*, 478 So.2d 549 (La.App. 3d Cir.1985), *writ refused*, 481 So. 2d 1330 (La.1986); *Knott v. Frank's Casing Crew & Rental Tools, Inc.*, 468 So.2d 798 (La.App. 1st Cir.1985).

5. *See, e.g., Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988).

presented to the district court indicates that there is a genuine question of material fact as to Chevron's retention of operational control.

This Court has noted the general rule regarding employer liability for the negligent acts of an independent contractor:

> [T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way.*[6]

Louisiana law recognizes, as a corollary to the above stated general principle, that the mere presence of a "company man" is not sufficient to constitute the retention of operational control.[7]

> "The fact that [the owner] periodically inspected the jobsite to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control."[8]

The "company man" on the S.T. 151 project was Jim Melancon, Chevron's construction engineer. Throughout the course of the project, Dean LeBlanc, C & B's on-site supervisor, would generally discuss the work with Melancon. LeBlanc would then instruct the C & B workers as to how they should perform their work.[9]

Boutwell, seeking to distinguish *Ainsworth,* argues that the evidence indicates that Chevron played a more active role in the day to day operations of C & B,[10] and the issue should properly go before a jury. After reviewing the evidence, we agree with the district court's assessment.

Initially, we note that the contract between C & B and Chevron clearly indicated that C & B was to operate as an independent contractor. In *Hemphill v. State Farm Insurance Co.,* 472 So.2d 320, 322 (La.App. 3d Cir.1985), the court noted that control "depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is *actually* exercised by the principal is less significant."

The summary judgment evidence, including the contractual provisions, does not support the imposition of liability against Chevron. All materials needed for the construction, with the exception of the actual grating, were provided by C & B. C & B also created the hole in question.[11] Further, C & B was solely responsible for advising their employees as to how to perform the necessary work including the rope-off procedure. The deposition of LeBlanc stresses that C & B was fully responsible for barricading holes created in the course of their work:

> Q: And Mr. Melancon, he did not tell your men how they should go about performing their work; did he?
>
> A: Correct.

---

**6.** *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 175 n. 9 (5th Cir.1979) (citing Restatement (Second) of Torts § 414, comment c at 388 (1965) (emphasis added)).

**7.** *Williams v. Gervais F. Favrot Co.,* 499 So.2d 623 (La.App. 4th Cir.1986), *writ refused,* 503 So.2d 19 (1987).

**8.** *Ainsworth,* 829 F.2d at 550 (quoting *Williams* at 626).

**9.** For example, LeBlanc specifically instructed Boutwell to employ the "rope off" procedure whenever Boutwell created a hole in the course

of his work. Boutwell Deposition, Record at 135.

**10.** For example, in addition to the assertion that Melancon did more than merely oversee C & B's progress, Boutwell argues that Chevron provided the tools to use during the structural upgrade. However, the evidence indicates that C & B provided all the necessary tools and equipment with the sole exception of the actual grating which was being replaced. Deposition of Forrest Callais, Record at 148.

**11.** LeBlanc Deposition, Record at 120.

Q: The way it worked, as I understand it, he would tell you generally what work needed to be done and then you would see to it that that work was done?

A: Correct....

Q: In terms of seeing to it that [roping off] was done, if there was a hole in the grating deck that was chained off, that was C & B's job to see to it that that was done?

A: Correct.

Q: In other words, Jim Melancon wouldn't come around and chain the holes or tell people to chain the holes?

A: Correct.

Deposition of LeBlanc, Record at 116, 117.

If a deficiency in the work became apparent, Melancon would inform LeBlanc; it was LeBlanc's job to see that the problem was remedied.[12] In short, all of the evidence before the district court indicates that C & B acted in the capacity of a true independent contractor pursuant to the terms of the contractual arrangement. C & B was responsible for determining the methodology of the work to be accomplished, while Chevron stood guard over the finished product.

Absent operational control retained by Chevron, Chevron cannot be held liable for the negligent acts of its independent contractor.[13] The summary judgment evidence is not sufficient to raise a genuine question of fact as to the retention of operational control. Consequently, the district court did not err in granting summary judgment in favor of Chevron on this ground of recovery.

### III.

■ Boutwell next argues that the district court erred in granting summary judgment in favor of Chevron pursuant to the strict liability count. Article 2317 holds a party strictly liable where the plaintiff establishes (1) that the property which caused the damage was in the custody of the defendant, (2) that the property was defective because it was a condition that created an unreasonable risk of harm to persons on the premises, and (3) that the defect in the property was the cause in fact of the resulting injury. *See, e.g., Stewart v. Sam Wallace Indus. Co.*, 409 So.2d 335 (La.App. 1st Cir.1981), *writ refused,* 413 So.2d 497 (La.1982). Because Boutwell cannot, as a matter of law, establish all of the elements of 2317 liability, the district court properly granted summary judgment in Chevron's favor.

This Court has noted that "custody" in the context of Article 2317, means supervision and control. *Steele v. Helmerich & Payne Int'l Drilling Co.*, 738 F.2d 703 (5th Cir.1984). Boutwell argues that, even if Chevron is determined not to be in control for purposes of 2315, it still retained Article 2317 custody of the offshore oil platform. This is not an issue which we are required to address.

Boutwell cannot demonstrate that there was a defect creating an unreasonable risk of harm. As the court in *Stine v. Creel,* 417 So.2d 1243, 1246 (La.App. 1st Cir.1982), *writ denied,* 422 So.2d 163 (La.1982), noted, the independent contractor was not entitled to relief because "[t]he roof ... does not constitute a defective thing that caused injury to Stine. Again, it was not the roof that caused the injury—it was the manner about which Stine sought to remove it that caused the injury." Similarly, it was not the platform or hole which caused Boutwell's injury, but the negligent way in which C & B marked their construction related holes. Furthermore, not only did Boutwell's employer, C & B, create the hole, but Boutwell's supervisor informed him of the hole's presence, and warned him

---

12. Melancon Affidavit, Record at 110–11.

13. Rockwell argues, as an alternative ground on which to base Chevron's liability, that Chevron authorized unsafe work practices. A similar situation was addressed in *Ainsworth,* 829 F.2d at 551. The Court foreclosed the argument, noting that the defendant was under no duty to interject himself into the situation to correct the hazard, nor did the defendant create the hazard. Under such circumstances, like those in the case *sub judice,* Louisiana law will not support liability.

to be careful.[14] The hole, which was known to Boutwell, did not create an unreasonable risk of harm. *See, Walker v. James W. Salley, Inc.,* 412 So.2d 159 (La. App. 3d Cir.1982), *writ denied,* 415 So.2d 954 (La.1982); *Silliker v. St. Landry Parish Police,* 520 So.2d 880 (La.App. 3d Cir. 1987).

## IV.

The district court did not err in granting summary judgment in favor of Chevron. The evidence before the district court indicated that there was no question of material fact as to the retention of control by Chevron. Similarly, Boutwell cannot prevail under Article 2317's strict liability provision. The judgment of the district court is AFFIRMED.

---

**14.** Boutwell Deposition, Record at 140–41.