**Rex Allen JERNIGAN, Husband of and Rose B. Jernigan**

v.

**ASHLAND OIL, INC. and/or Ashland Pipe Line Company, et al.**

Civ. A. No. 90–0585.

United States District Court, W.D. Louisiana, Alexandria Division.

Dec. 18, 1991.

Joseph J. Weigand, Jr., Jeffrey M. Boudreaux [term 04/27/90], Weigand, Weigand & Meyer, Houma, LA, for plaintiffs.

Glenn G. Goodier, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Ashland Oil Inc. and Ashland Pipe Line Co., defendants.

Patrick A. Juneau, Jr. [term 02/26/91], Juneau, Judice, Hill & Adley, Lafayette, LA, for Drilled Crossings Inc., defendant [term 02/26/91].

Thomas K. Brocato [term 02/26/91], Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, for Baker Pipeline Inc. and Theta II Enterprises Inc., defendants [term 02/26/91].

## RULING

LITTLE, District Judge.

In January of 1989, Ashland Pipe Line Company, a subsidiary of Ashland Oil Company, entered into a contractual agreement with Drilled Crossings to construct a directionally drilled four inch pipeline beneath the Red River. The purpose of the pipeline was to carry crude oil from the storage tanks of other companies to another pipeline that eventually carried it to the refinery. Drilled Crossings, in turn, contracted with Baker Pipeline, an unincorporated division of Theta II Enterprises. Theta II provided Drilled Crossings with welders, laborers, and equipment for the pipeline construction project. This action for personal injury damages arose when Rex Jernigan, the plaintiff in this

action, was injured within the course and scope of his employment as a general laborer or "roustabout" on the Red River pipeline construction project.

On 4 February 1989, the plaintiff was tailing the end of the pipe into a hole in the river to insure that the end of the pipe would not be damaged or scarred when it fell off the roller. When the pipe eventually fell, the plaintiff caught it and was suddenly jerked to his knees, causing him to rupture a disc in his lower back. Plaintiff and his wife subsequently filed a negligence action in the Twelfth Judicial District, Parish of Avoyelles, State of Louisiana, alleging a failure to provide adequate workers and equipment to perform the job safely, a failure to insure that the work was being performed, and a failure to provide plaintiff with a safe workplace. Mrs. Jernigan also claimed a loss of consortium as a result of the accident.

Once removed to federal court pursuant to 28 U.S.C. § 1332, it was determined that Mr. Jernigan's employers for purposes of this action were Theta II and Drilled Crossings, as the principal of Theta II. As both the statutory employer and principal respectively, Theta II and Drilled Crossings were held by this court to fall within the purview of the Worker's Compensation Act. All claims by the plaintiffs against Theta II and Drilled Crossings were dismissed by this court when it granted both defendants' motions for summary judgment.

Presently before this court are a number of motions. The first is a motion filed by Ashland Oil Company requesting summary judgment in its favor as against the plaintiffs. The plaintiffs have also filed a motion opposing Ashland's request for summary judgment and requesting a trial on the merits. The second is a motion for summary judgment filed by Ashland Oil Company seeking contractual indemnity from Drilled Crossings. The third is a motion for summary judgment filed by Drilled Crossings requesting summary judgment in its favor as against Ashland Pipe Line on the issue of indemnity.

The first issue that must be addressed by this court is the issue of liability. Based on the evidence presented by both the plaintiff and Ashland Pipe Line, there existed a contract between Ashland Pipe Line and Drilled Crossings to perform the Red River project. Drilled Crossings then subcontracted with Theta II for welders, laborers, and equipment to perform the welding, buffing, and coating of the pipe. It is undisputed that Mr. Jernigan was an employee of Theta II, the independent contractor.

■ In Louisiana, it is well settled that a principal is not liable for the offenses of its independent contractor committed while performing under a contract. *Grammer, et al. v. Patterson Services, Inc. et al,* 860 F.2d 639, 641 (5th Cir.1988); *Bartholomew v. CNG Producing Co.,* 832 F.2d 326 (5th Cir. 1987); *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir.1987). There are two exceptions to this general rule.

■ The first exception requires that a principal be held liable for injuries resulting from an ultrahazardous activity. *Grammer,* 860 F.2d at 326. Louisiana law defines ultrahazardous within three boundaries:

> (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury.... The 'ultrahazardous' label is thus limited to those activities which present "risk of harm that cannot be eliminated through the exercise of due care."

*Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548 (5th Cir.1987). Both parties concede that drilling operations of the nature in question in this case, do not constitute ultrahazardous activities under Louisiana law. Thus, the exception is inapplicable.

■ The second exception to the general rule holds a principal liable for the negligent acts of its independent contractor when the principal retains or exercises operational control. *Ainsworth,* 829 F.2d at 550. This is the point upon which the dispute between the plaintiff and defendant rests.

The plaintiff argues that based on the deposition testimony, using machinery to tail the pipe would have been a safer method than using personnel. Additionally, the

plaintiff contends that because Ashland provided employees who were on the worksite periodically, Ashland knew or should have known that the practice used to tail the pipe was an unsafe one and thus, implicitly, authorized it.

The evidence indicates that although Ashland provided an inspector for the Red River project, his only purpose was to insure that the pipeline was welded and put in place in accordance with the specifications of the contract. He was not given instructions to be a safety inspector of any type. "The fact that [the principal] periodically inspected the jobsite to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control." *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d at 548 (5th Cir.1988) (quoting *Williams v. Gervais Favrot Co.*, 499 So.2d 623 (La.Ct.App. 4th Cir.1986).

The deposition of Clarence Clark, an Ashland Pipe Line employee, further indicates that Ashland had no preferences and made no suggestions about how the tail end of the pipe was to be guarded or protected. He stated that Ashland was only concerned with "results" and not the process by which the results were achieved. *See* deposition of Clarence Clark at 72. Delane Burnette, an Ashland engineering assistant whose position was essentially that of "gopher," stated in his deposition that he had no authority to supervise operational practices and knew little about the process of tailing pipe. *See* deposition of Delane Burnette at 10–16. The testimony of Marvin Bourg, a mechanic for Theta II, also indicated that the Ashland inspector present on the worksite was only there to make sure that the project was done in conformity with the specifications. *See* deposition of Marvin Bourg at 18–20. There has been no evidence presented to this court to substantiate plaintiff's claim that Ashland Pipe Line or Ashland Oil Company exercised operational control over the pipeline project. Thus, neither Ashland Pipe Line nor Ashland Oil Company was "under a duty to take affirmative action to protect the employees of the independent contractor, [Theta II,] from injuries sustained in the course of the contracted-for work" by providing additional workers or equipment to tail the pipe. *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 906 (5th Cir.1985).

 Parenthetically, the court finds the applicability of the Louisiana Oilfield Anti-Indemnity Act to be a non-issue in this case. The contract between Ashland Pipe Line and Drilled Crossings does not pertain to the production or exploration of oil as required by the Act, but is related to the process of refining oil. It is clear that the legislature of Louisiana did not intend the Act to apply to activities that do not relate directly to the exploration or production of oil. *See Transcontinental v. Lloyds, London*, 734 F.Supp. 708, 716 (M.D.La.1990).

Based on the foregoing conclusions of law, the Anti-Indemnity Act does not apply to the Ashland Pipe Line–Drilled Crossings agreement. The terms of the indemnity agreement must govern the obligations of the parties. Thus, the court GRANTS Ashland's motion for summary judgment and DISMISSES all claims against it.