Timothy RANSOM

v.

PANACO, INC. and ABC Insurance Co.

Civil Action No. 97–1494.

United States District Court,
E.D. Louisiana.

Dec. 8, 1998.

Joseph N. Mayer, III, Valteau, Harris, Koenig & Mayer, New Orleans, LA, George A. Blair, III, George A. Blair, III, Attorney at Law, New Orleans, LA, for Timothy Ransom.

Morgan J. Wells, Jr., James Thomas Busenlener, Larzelere & Picou, LLP, Metairie, LA, for Panaco Inc., Unidentified Party.

George John Nalley; Jr., Piper Dinita Griffin, George J. Nalley, Jr., APLC, Metairie, LA, for Insurance Co. of State of Pennsylvania.

George John Nalley, Jr., Piper Dinita Griffin, George J. Nalley, Jr., APLC, Metairie, LA, Charles Frederick Seabolt, House, Kingsmill, Riess & Seabolt, LLC, New Orleans, LA, for Gulf South Systems, Inc.

PORTEOUS, District Judge.

This cause came for hearing on November 25, 1998 upon the motion of the defendant, Panaco, Inc. (hereinafter, "Panaco") for summary judgment as to all claims asserted against it. Oral argument was waived and the matter was taken under submission on the briefs.

The Court, having studied the memoranda submitted by the parties is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I. BACKGROUND

Before the Court comes defendant Panaco, seeking summary judgment in its favor, dismissing all claims asserted against it, on the grounds that (1) Panaco was not negligent as a matter of law, and (2) Panaco is not liable for any negligence attributed to its independent contractor, Gulf South Systems, Inc. (hereinafter, "GSS").

Ransom originally filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana. The case was subsequently removed by Panaco to this Court on the basis of diversity jurisdiction. GSS's worker's compensation carrier, The Insurance Company of Pennsylvania (hereinafter, "Insurance Company"), recently filed a complaint of intervention seeking to recover worker's compensation benefits and medical expenses paid to or on behalf of Ransom in this matter. Panaco also asserted a third-party complaint against GSS, Gulf South Systems, L.L.C., and Commerce and Industry Insurance Company for contractual defense and indemnity and additional insured coverage.

Plaintiff, Timothy Ransom (hereinafter, "Ransom"), claims that on or about April 23, 1996, he sustained a broken wrist while lowering a pump from a platform owned by Panaco to a barge. At the time of the accident, Ransom was employed by GSS as a tankman. His job duties involved performing tank cleaning services aboard a platform owned by Panaco, designated as West Delta 54 Tank Battery No. 3, in the Gulf of Mexico. Moreover, at all pertinent times, GSS was performing work for Panaco pursuant to a Master Work or Service Contract (hereinafter, "Contract"), executed by the parties on April 1, 1993.

Ransom alleges that Panaco was negligent in failing to keep a proper lookout, in failing to properly supervise the work being done on the platform, in failing to have proper equipment available, in operating the platform in a careless and reckless manner, and in failing to have proper safety precautions in effect. Panaco asserts, however, that Ransom's own deposition refutes these allegations and supports Panaco's argument that it should not be held liable in this matter.

When the accident occurred, Ransom and three other GSS employees were attempting to lower a pump by a rope from the upper deck of the platform to a barge. Panaco claims that it did not instruct GSS to lower the pump to the barge, nor did Panaco instruct GSS in the manner in which to lower the pump. Moreover, Panaco asserts that none of its employees were there supervising or observing the procedure at any time during the removal of the pump. Furthermore, Panaco maintains that although a lift crane was available on the platform, GSS chose not to utilize it. Also, Panaco asserts that according to Ransom's own deposition testimony, Panaco had never denied the use of the crane to GSS, nor had Panaco instructed GSS not to use the crane. In fact, Panaco claims that Ransom's own testimony indicates that the GSS crew had used the lift crane numerous times in the days preceding the accident, but decided not to use the crane to lift the pump involved in the accident. Finally, Panaco asserts that the GSS supervisor told his crew that the Panaco crane operator was asleep and that the crew should proceed with lifting the pump manually. Panaco maintains that Ransom admitted, that as far as he knew, no one tried to wake up the Panaco crane operator to request use of the crane. Consequently, Panaco alleges

that the GSS crew decided independently to proceed with lifting the pump manually.

In their opposition to Panaco's motion for summary judgment, the intervenors, the Insurance Company and GSS (hereinafter, collectively referred to as "intervenors"), submit that there are genuine issues of material fact which preclude the Court from granting summary judgment. One of the intervenors' objections to the claims made by Panaco is that Ransom's deposition testimony does not support all of the contentions made by Panaco. The intervenors assert that Ransom's testimony does not indicate that GSS did not ask and rely upon possible assertions made by representatives of Panaco in GSS's decision not to use the crane. The intervenors maintain that Ransom indicated that he was relying on his GSS supervisor for instructions on how to perform the task and that he was unaware of the procedure followed by the GSS supervisor in his decision-making process. The intervenors set forth no specific facts that GSS did ask in any way for permission to use the crane or that Panaco suggested to GSS that it should not use the crane.

The Contract governing the working relationship between Panaco and GSS is at the heart of the current dispute. Panaco claims that the Contract provided that GSS would work as an independent contractor and that Panaco would exercise no control over the work performed by GSS. Conversely, the intervenors assert that there is a provision in the Contract which suggests that the ultimate responsibility for performance of the job falls within the purview of Panaco; in the alternative, the intervenors claim that at the very least, the Contract is ambiguous as to the amount of control to be exercised by Panaco.

## II. *LEGAL ANALYSIS*

### A. *Law on Summary Judgment*

"[J]udgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether there are any issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Having done that, the Court must review the evidence bearing on those issues, viewing the facts and inferences therefrom in the light most favorable to the nonmoving party. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

Initially, the moving party bears the burden of establishing that there are no genuine issues of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To satisfy this burden, the moving party may either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). The Court does not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075.

If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response, however, if the movant does meet this burden, the burden shifts to the nonmoving party to go beyond the pleadings and designate specific facts and competent summary judgment evidence sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Unsubstantiat-

ed or conclusory assertions that a fact issue exists will not suffice. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim*, 989 F.2d at 1442. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512. If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. As the Supreme Court has said, if a rational trier could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

### B. *The Contract Governing the Working Relationship Between the Panaco and GSS*

In the Contract governing the working relationship between Panaco and GSS, there are two provisions which are pertinent to the analysis at hand. Subsection II of the Contract states as follows:

> II. MANNER OF PERFORMANCE OF WORK OR SERVICES
>
> All work or services contemplated by this Contract shall be performed or rendered by Contractor [GSS] with due diligence and in good, workmanlike and timely manner, all in accordance with the specification or instruction of Company [Panaco].

*See* Doc. # 39, Exhibit A–1. Furthermore, Subsection III provides the following:

> III. INDEPENDENT CONTRACTOR RELATIONSHIP
>
> It is expressly understood that Contractor [GSS] shall perform work or services hereunder as an independent contractor. Company [Panaco] shall exercise no control over the Contractor's employees, servants, agents or representatives, nor those of its subcontractor(s), nor the methods or means employed by Contractor in the performance of such work or services, Compa-

ny being solely interest [sic] in the attainment of the desired results.

*Id.*

### C. *Liability of Principal for Negligence of Independent Contractor*

In order to underscore the importance of these contractual provisions, the Court will now delineate the law applicable to the dispute in this matter.

■ A principal, such as Panaco, cannot be held liable for injuries resulting from the negligent acts of an independent contractor, such as GSS, unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal, or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts. *See Coulter v. Texaco, Inc.*, 117 F.3d 909, 911–912 (5th Cir.1997); *see also Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir.1994); *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549–550 (5th Cir.1987).

■ Since there was clearly no ultrahazardous activity at issue in this case, the Court will examine the "operational control" element. In determining whether operational control exists, the Court must determine first whether and to what extent the right to control the work has been contractually reserved by the principal (Panaco). *Coulter*, 117 F.3d at 912. In *Coulter*, Texaco entered into a contract with Coulter's employer, whereby the employer agreed to provide a drilling rig and a crew to perform drilling operations on a platform owned by Texaco in the Gulf of Mexico. *Id.* at 910. The contract provided that the employer, as an independent contractor, would control, direct and maintain responsibility for the performance of the details of the work. *Id.* The only right reserved by Texaco was to observe and inspect the employer's work to ensure its satisfactory completion. *Id.* In pertinent part, the court in *Coulter* states as follows:

> [T]he fact that a principal like Texaco reserves the right to monitor its contractor's performance and stations a "company man" on the platform who observes the contractor's activities, has the right to

make safety recommendations to the contractor, and is obligated to report continuing unsafe work practices or conditions to his (Texaco) superiors, does not mean that the principal controls the methods or details of the contractor's work. In short, absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal like Texaco cannot be liable under the operational control exception.

*Id.* at 912 (footnotes omitted); *see also Ainsworth,* 829 F.2d at 550–551 (Here, the Fifth Circuit held that a principal did not retain control over the step-by-step operations of a drilling rig through the presence of a "company man" when the contract provided that the independent contractor was responsible for the performance of all the work, and the principal was interested solely in the results obtained.).

Clearly, Subsection III of the Contract at issue was constructed so as to create the same principal/independent contractor relationship as existed in both *Coulter* and *Ainsworth.* The Court finds that Subsection II of the Contract, which states that "[a]ll work or services contemplated by this Contract shall be performed or rendered ... in accordance with the specifications or instructions of Company," when read in conjunction with Subsection III, does not operate to reserve to Panaco the right of "operational control." The Court finds that the unambiguous contractual language leaves GSS in control of the step-by-step operations aboard the platform. Therefore, the Court finds for Panaco in that Panaco did not retain operational control over GSS's acts.

■ However, the Court must also determine whether Panaco expressly or impliedly authorized the acts of GSS. *See Coulter,* 117 F.3d at 912. As Panaco indicates, Ransom testified that he did not receive any work instructions from Panaco personnel. Moreover, there has been no evidence proffered by the intervenors to indicate that any Panaco employee directed, supervised, or observed the work of the GSS crew. There has been nothing set forth in the record which would suggest that Panaco had either expressly or impliedly authorized the acts

which allegedly resulted in the accident. Even if Panaco had been made aware of GSS's plans and had observed the operations, such actions would not amount to express or implied authorization. *See Ainsworth,* 829 F.2d at 550. Thus, the Court finds that under the applicable summary judgment law, Panaco has satisfied its initial burden, shifting the burden to the intervenors to designate specific facts which indicate that there is a genuine issue for trial. With regard to showing an express or implied authorization by Panaco of GSS's acts, the intervenors have not met their summary judgment burden.

### D. *Liability of Principal for Independent Acts of Negligence*

■ Furthermore, the intervenors have not set forth specific facts which indicate that Panaco committed any independent acts which might constitute negligence in this matter. A platform owner and principal owes no independent duty to exercise reasonable care to protect a contractor's employee from hazards created by the contractor. *See Dupre v. Chevron USA, Inc.,* 109 F.3d 230, 231 (5th Cir.1997); *see also Graham,* 21 F.3d at 648; *Ainsworth,* 829 F.2d at 550–551. The Court finds that there is no evidence in the record showing that Panaco should be held liable in this matter for any alleged independent acts.

### E. *Conclusion*

Panaco, as owner of the platform and principal to GSS, cannot be held liable as a matter of law for the accident at issue in this case. The activities conducted by GSS were not ultrahazardous, and Panaco did not retain operational control over the work performed by the GSS crew. Moreover, Panaco neither expressly nor impliedly authorized the operations conducted by GSS at the time of the accident in question. Furthermore, there is no evidence of any direct acts of negligence of Panaco in this matter.

Accordingly,

**IT IS ORDERED** that the motion by the defendant Panaco for summary judgment is

GRANTED, DISMISSING all claims asserted against it WITH **PREJUDICE**.