955 So.2d 730 (2007)
Billy DENSON
v.
DIAMOND OFFSHORE COMPANY and Walter Oil & Gas Corporation.
No. 2006-CA-0568.
Court of Appeal of Louisiana, Fourth Circuit.
March 28, 2007.
Robert J. Young, Timothy J. Young, N. Husted DeRussy, Robin Richmond Klibert, The Young Firm, New Orleans, LA, for Billy Denson.
Terrill W. Boykin, New Orleans, LA, Christopher B. Siegrist, Houma, LA, for Walter Oil & Gas Corporation.
Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge ROLAND L. BELSOME.
TERRI F. LOVE, Judge.
This appeal arises from a Jones Act suit filed by Billy Denson, a Diamond Offshore *731 Company employee who injured his neck and back while working on the Diamond Offshore Company vessel, M/V OCEAN SARATOGA. Diamond Offshore Company contracted with Walter Oil & Gas Corporation to drill a well. Walter Oil & Gas Corporation filed a motion for summary judgment asserting that it was not liable for the actions of an independent contractor, Diamond Offshore Company, and that the Minerals Management Service regulations did not create a private right of action. The trial court granted Walter Oil & Gas Corporation's motion for summary judgment. Billy Denson appealed and this Court reversed the trial court granting of the motion for summary judgment because Walter Oil & Gas Corporation failed to attach a copy of the drilling contract and the evidence did not show that there were no genuine issues of material fact.
Walter Oil & Gas Corporation then attached the drilling contract and filed a second motion for summary judgment, which the trial court granted. Billy Denson appeals averring that the trial court erred because genuine issues of material fact exist and the Minerals Management Service regulations do create a private right of action. We find that genuine issues of material fact exist as to whether Walter Oil & Gas Corporation retained operational control in the drilling contract, which determines whether it is liable for its alleged negligence, and reverse.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
In our prior decision, Denson v. Diamond Offshore Co., 04-1436 (La.App. 4 Cir. 3/30/05), 897 So.2d 920, we summarized the pertinent facts as follows:
On or about May 11, 2002, plaintiff/appellant, Billy Denson, employed as a Jones Act seaman by Diamond Offshore Company (Diamond) aboard the M/V Ocean Saratoga, slipped and fell while painting a stairway. On July 2, 2002, he filed suit in Civil District Court for the Parish of Orleans against Diamond and defendant/appellee Walter Oil & Gas Corporation (Walter), alleging that the accident was caused by oil based mud on the steps and, as such, the direct result of defendants' negligence and the unseaworthiness of the vessel. On May 26, 2003, Walter moved for summary judgment, arguing that summary judgment was appropriate because the drilling contract between Walter and Diamond expressly provides that (1) Diamond is an independent contractor solely responsible for its own performance, drilling the well, the crew, and repair and maintenance of the equipment on the rig; and (2) a representative is appointed to the rig by Walter solely to monitor and ensure completion of the work contemplated under the contract. In support of its motion, Walter attached (1) excerpts from the deposition of Bradley Pitt, Walter's representative on the M/V Ocean Saratoga (exhibits A-B, L-M, O-P); and (2) excerpts from deposition of the plaintiff (exhibits C-K; N, Q-Z, aa, bb[1]).
In opposition, the plaintiff contended that summary judgment should be denied because, despite the contract between Diamond and Walter, Walter is *732 responsible for its own negligent acts. In support of its opposition to defendant's motion, plaintiff cited federal precedent which holds that an owner of an offshore oil platform owes a duty to the employee of an independent contractor to insure that the platform was reasonably safe and attached (1) excerpts from his deposition (exhibit A); (2) copies of several federal cases; and (3) excerpts from Pitt's deposition.
Walter filed a reply brief, arguing that (1) the plaintiff failed to show why the independent contractor legal doctrine did not exonerate Walter; and (2) the plaintiff misrepresented Pitt's statement that he inspected the vessel to insure that everything "is running right" in an attempt to create a material issue of fact to preclude summary judgment. In support of its reply, Walter attached another excerpt of Pitt's deposition.
On May 3, 2004, without oral or written reasons, the trial judge signed an amended judgment granting Walter's Motion for Summary Judgment.[2]
On appeal, this Court reversed the trial court's judgment, which granted the motion for summary judgment. Specifically, this Court found that "Walter based its motion on its interpretation of the contract and the independent contractor doctrine, but failed to properly support its motion with a copy of the contract." This Court concluded that Walter Oil Gas Corporation ("Walter") failed to sustain its burden of proof that no genuine issues of material fact existed and that it was not entitled to summary judgment. Thereafter, Walter again moved for summary judgment on identical grounds, attaching a copy of the drilling contract between Walter and Diamond Offshore Company ("Diamond"). The trial court again granted summary judgment in favor of Walter based on the attachment of the drilling contract. Billy Denson's ("Mr. Denson") appeal timely followed.
Mr. Denson asserts two assignments of error: (1) the trial court incorrectly granted summary judgment in favor of Walter given that genuine issues of material fact exist and (2) the trial court incorrectly found that Minerals Management Service ("MMS") regulations do not create a private right of action.

STANDARD OF REVIEW
The standard of review of a trial court's decision granting summary judgment is de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The reviewing court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to find genuine issues of material fact. La. C.C.P. art. 966(B). If the court finds no genuine issues of material fact, the "mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The mover bears the burden of proof. La. C.C.P. art. 966(C)(2).

SUMMARY JUDGMENT
The question in reviewing the summary judgment denial and alleged factual issues is whether Walter "retained operational control" on the drilling vessel OCEAN SARATOGA. Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 550 (5th Cir. 1987). The contract between Walter and Diamond and the testimony of Bradley Pitts ("Mr. Pitts"), Walter's "company man," reveal issues of fact that do not *733 warrant the granting of summary judgment on the issue.

OPERATIONAL CONTROL
The control of operations "determination `depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant.'" Ainsworth, 829 F.2d at 550-51, quoting Hemphill v. State Farm Ins. Co., 472 So.2d 320, 322 (La.App. 3 Cir.1985). The contract contains clauses that are suggestive of Walter maintaining some aspects of control over the vessel. For example, Article III, § 303, "Increase in Contractor's Personnel" states: "[o]perator may, at any time, with Contractor's approval require Contractor to increase the number of Contractor's Personnel and the day rates provided herein shall be adjusted accordingly." Further, § 304, "Replacement of Contractor's Personnel" states: "[c]ontractor will remove and replace in a reasonable time any of Contractor's Personnel if Operator so requests in writing and if Operator can show reasonable grounds for its request." Additionally, in Article V  "Contractor's General Obligation, § 501 "Contractor's Standard of Performance," Walter retains control over the daily operations of the vessel. The clause states:
Contractor shall carry out all operations hereunder on a daywork basis. For purposes hereof the term "daywork basis" means Contractor shall furnish equipment, labor, and perform services as herein provided, for a specified sum per day under the direction and supervision of Operator (which term is deemed to include any employee, agent, consultant or subcontractor engaged by Operator to direct drilling operations). When operating on a daywork basis, Contractor shall be fully paid at the applicable rates of payment and assumes only the obligations and liabilities stated herein.
Lastly, § 503 "Compliance with Operator's Instructions" reads:
Contractor shall comply with all instructions of Operator consistent with the provisions of this Contract, including, without limitation, drilling, well control and safety instructions. Such instructions shall, if Contractor so requires, be confirmed in writing by the authorized representative of Operator. However, Operator shall not issue any instructions which would be inconsistent with Contractor's rules, policies or procedures pertaining to the safety of its personnel, equipment or the Drilling Unit, or require Contractor to exceed the rated capacities of Contractor's Items or the minimum or maximum water depths or maximum well depth set forth in Appendix A.
The drilling contract provides that Diamond, the contractor, "shall comply with all instructions" of Walter, the operator, and that Diamond is under the "direction and supervision" of Walter. Diamond was also required to comply with Walter's "drilling, well control and safety instructions." These provisions demonstrate a question as to Walter's role in the day-to-day operations of the vessel. The drilling contract stated that Walter retained the right to control aspects of Diamond's employment system and how the vessel operated. Therefore, the provisions of the drilling contract create a question of material fact as to Walter's degree of operational control.
Jurisprudence interpreting the operator and contractor relationship uniformly states that the mere presence of a company man or representative on the jobsite does not indicate liability. See Ainsworth 829 F.2d at 550-51; Wallace v. Oceaneering *734 Int'l, 727 F.2d 427, 436-37 (5th Cir. 1984); McCormack v. Noble Drilling Corp., 608 F.2d 169, 174-75 (5th Cir.1979). However, these cases are factually distinguishable because they involve company men who were not involved in actual safety checks, unlike Mr. Pitts, or who only occasionally visited the jobsite. For example, in Ainsworth, the company man "had no right to interfere in Hercules' operation; he only represented Shell's interest in the final product." 829 F.2d at 551. The court further stated that "Shell retained no control over Hercules' activity." Id. Similarly, in Wallace, the company man ensured that his company achieved the desired end result. 727 F.2d at 436. He had "no actual control over or responsibility for the details of the drilling and diving work, but merely inspected progress." Id. at 437. The court continued in its analysis by stating that the company man did not "control the operation of the particular procedure in which Wallace was injured." Id. The company representative in McCormack also lacked specific knowledge or involvement in the procedures or operations that injured the plaintiff. 608 F.2d at 174. These cases present different factual scenarios.
Walter's "company man," Mr. Pitts stated in his deposition that he would perform safety checks according to the MMS regulations. He said that he checked the lighting every day and would report problems to Diamond's employee, Bobby Hugh Adams ("Mr. Adams"). However, Mr. Adams indicated that he could and would notify Diamond of any lighting hazard Mr. Pitts found on the rig. Mr. Denson alleges that improper lighting partially caused his fall. Mr. Pitts was asleep at the time of Mr. Denson's accident and allegedly did not know Mr. Denson. Additionally, Mr. Pitts alleges that he did not supervise or instruct Mr. Denson or fellow employees in their duties. Additionally, he testified that he was "on call 24 hours." Therefore, questions of fact exist as to whether Mr. Pitts knew or should have known of any hazards on the rig at the time of Mr. Denson's accident. Mr. Pitts' lighting safety checks and twenty-four hour on call status also create questions of fact as to the operational control Walter retained.
In the case sub judice, the contractual provisions and Mr. Pitts' actions create factual questions as to his or Walter's responsibilities on the vessel. There are also issues regarding Mr. Pitts and Walter's control over aspects of Diamond's contracted work. We find that genuine issues of material fact exist regarding whether Walter maintained operational control of the drilling rig and reverse the granting of summary judgment by the trial court.

PRIVATE RIGHT OF ACTION/WALTER'S ALLEGED NEGLIGENCE
Mr. Denson asserts that MMS regulations should not be used to "insulate lease operators from liability and preclude a cause of action for basic negligence against a party who is contractually bound by such regulations." As such, Mr. Denson avers that Walter is liable under Louisiana negligence law for its alleged negligent acts.
The United States Fifth Circuit Court of Appeal, in Coulter v. Texaco, Inc., 117 F.3d 909, 911-12 (5th Cir.1997), held that a principal can be liable for "injuries resulting from the negligent acts of an independent contractor" if "the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." Operational control "requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal." Id., 117 F.3d at 912.
*735 Walter avers that United Stated Fifth Circuit case, Fruge ex Rel. Fruge v. Parker Drilling Co., 337 F.3d 558 (5th Cir. 2003), is persuasive in determining that MMS regulations do not make mineral lease owners responsible to conduct mineral development and production operations safely. Walter asserts that Diamond, as the owner of the drilling rig, was solely responsible for the drilling rig. Walter's comparison is misplaced. We find that Fruge found that no cause of action existed under MMS regulations. 337 F.3d at 566. However, Fruge recognized the operational control exception based on Louisiana negligence law as espoused in Coulter. 337 F.3d at 564. The court in Fruge, examined the facts and determined that the principal did not maintain operational control; therefore, no private cause of action under MMS regulations or negligence claim based on Louisiana law existed. 337 F.3d at 564-65.
In the case sub judice, we find that genuine issues of material fact exist as to whether Walter maintained operational control under the provisions of the drilling contract and/or by the actions of Mr. Pitts. Following the reasoning of Fruge and Coulter, we find that a negligence action exists if the principal retained operational control. Thus, if the trier of fact determines that Walter retained operational control through the drilling contract and/or by the actions of Mr. Pitts, then Mr. Denson possesses a negligence action based on Louisiana law.

DECREE
We find that genuine issues of material fact exist as to whether Walter maintained operational control, which determines if Mr. Denson possesses a negligence action under Louisiana law. Accordingly, we reverse the decision of the trial court.
REVERSED AND REMANDED.
MURRAY, J., dissents with reasons.
BAGNERIS, J., dissents.
MURRAY, J., dissents with reasons.
The plaintiff couches the issue presented as whether Walter Oil & Gas Corporation retained operational control and emphasizes the presence of Walter's company man on board. However, there is no evidence of negligence. What the plaintiff actually is alleging is an unseaworthiness claim, which is not a viable claim against Walter  a non-vessel owner. For these reasons, I respectfully dissent.
BAGNERIS, J., dissents.
I respectfully dissent for the reasons assigned by Judge MURRAY.
NOTES
[1] In its memorandum in support of motion for summary judgment, appellee states that "The drilling contract between Walter and Diamond is attached" and cites to "Exhibit `bb', p. 59." However, Exhibit "bb" in the record contains pages 57-60 of the plaintiff's deposition and is paginated as "112."
[2] The initial judgment signed on April 16, 2004, the day of the hearing, erroneously stated that the motion was unopposed.